UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

STRIKE 3 HOLDINGS, LLC,

                        Plaintiff,

- against -

JOHN DOE, subscriber assigned IP address
151.202.19.143,

                        Defendant.

----------------------------------------------------------------X

Case No. 19-CV-02481(SJF)(SIL)

**NOTICE OF MOTION TO
QUASH SUBPOENA AND TO
PROCEED ANONYMOUSLY**

      **PLEASE TAKE NOTICE** that, upon the attached Memorandum of Law and the exhibits

attached thereto, the defendant, John Doe, subscriber assigned IP address 151.202.19.143

("Defendant"), will move this Court before the Honorable Steven I. Locke, at the United States

Courthouse, 100 Federal Plaza, Central Islip, New York, on December 13, 2019, or as soon

thereafter as possible, for an Order, pursuant to Fed. R. Civ. P. 26(b)(1) and 45(d)(3), quashing the

subpoena served by the plaintiff, Strike 3 Holdings, LLC ("Plaintiff"), upon Verizon; permitting

Defendant to proceed anonymously; and awarding Defendant such other and further relief as the

Court deems just and proper.

      **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Civil Rule 6.1, any

opposition to this motion is due within seven days after service.

Dated: November 15, 2019

                        Respectfully submitted,
                        HOGAN & CASSELL, LLP
                        Attorneys for Defendant

                        By: _____
                        Michael Cassell
                        500 North Broadway, Suite 153
                        Jericho, New York 11753
                        Tel. (516) 942-4700
                        Email  mcassell@hogancassell.com

To:

Jacqueline M. James, Esq.
The James Law Firm, PLLC
*Attorneys for Plaintiff*
445 Hamilton Avenue
Suite 1102
White Plains, New York 10601

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STRIKE 3 HOLDINGS, LLC,

Case No. 19-CV-02481(SJF)(SIL)

Plaintiff,

- against -

JOHN DOE, subscriber assigned IP address
151.202.19.143,

Defendant.
------------------------------------------------------------------X

# DEFENDANT'S MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO QUASH SUBPOENA
# AND TO PROCEED ANONYMOUSLY

HOGAN & CASSELL, LLP
*Attorneys for Defendant*
Michael Cassell
500 North Broadway, Suite 153
Jericho, New York 11753
Tel. (516) 942-4700
Fax (516) 942-4705
Email mcassell@hogancassell.com

Service Date: November 15, 2019

# TABLE OF CONTENTS

I.  INTRODUCTION…………….............................................................................................1

II. RELEVANT FACTS.............................................................................................................2

III. ARGUMENT……………………………………………………….....................3

IV. CONCLUSION…………………………………………………….....................10

# I. <u>INTRODUCTION</u>

The defendant, John Doe, subscriber assigned IP address 151.202.19.143 ("Defendant" or "Doe"), respectfully submits this Memorandum of Law in support of the motion seeking to quash the subpoena served by the plaintiff, Strike 3 Holdings, LLC ("Plaintiff" or "Strike 3"), upon Verizon (the "Subpoena") (a copy of the Subpoena is attached hereto as Exhibit A), pursuant to Fed. R. Civ. P. 26(b)(1) and 45(d)(3).

By way of the Subpoena, Plaintiff seeks that Verizon identify the name of the individual that was supposedly the subscriber assigned the Internet Protocol ("IP") address 151.202.19.143 on January 18, 2019, at approximately 2:00 a.m. (the "subscriber").

It is evident that the Subpoena should be quashed.

Indeed, just a few weeks ago in the matter <u>Strike 3 Holdings, LLC v. Doe</u>, 2019 U.S. Dist. LEXIS 184513, 2019 WL 5446239 (D.N.J. Oct. 24, 2019) (the "Strike 3 Decision") (for the Court's convenience, a copy of the Strike 3 Decision is attached hereto as Exhibit B), the court extensively analyzed the issue of whether or not a subpoena served by Plaintiff, under circumstances virtually identical to the matter at hand, should be quashed. Most significantly, after holding two evidentiary hearings and after extensive briefing, the court held that it was appropriate to quash Strike 3's subpoena. As discussed in more detail below, the keys to the court's holding were that:

- a particular subscriber does not have a set IP address, rather IP addresses are "dynamic" [i.e. not fixed] and "Strike 3 knows that at different times different people can have the same IP address."

- since IP addresses change and since Strike 3's complaint is premised upon copyright infringement from the same IP address over a period of many months, the subscriber identified by Strike's 3 subpoena may be a completely different individual than the subscriber of the IP address on the other dates referenced in the complaint.

- even if the subpoena identified the holder of the IP address (i.e. the subscriber), "Strike 3 acknowledges it is equally likely the subscriber or someone in the household is to blame for the infringement."

- "Strike 3 acknowledges it does not know if the subscriber infringed its works."

- a hacker can hide his/her own IP address by using someone else's.

In addition, in <u>Strike 3 Holdings, LLC v. Doe</u>, 331 F.R.D. 14, 2019 U.S. Dist. LEXIS 69632, 2019 WL 2022452 (E.D.N.Y. 2019) (M.J. James Orenstein) (the "James Orenstein Decision") (for the Court's convenience, a copy of the James Orenstein Decision is attached hereto as Exhibit C), the court refused Strike 3's motion for expedited discovery. As explained in more detail below, one of the keys to the court's holding was that Strike 3 acknowledged that in an "alarmingly high" percentage of the cases where it seeks the name of the subscriber, Strike 3 acknowledged that it "could not satisfy itself that the named defendant was actually the alleged infringer."

Further, even if the Court denies the motion to quash, it is respectfully requested that the Court should permit Defendant to proceed anonymously in this matter.

## II. <u>RELEVANT FACTS</u>

Plaintiff commenced this action against Doe on April 26, 2019 (a copy of the Complaint is attached hereto as Exhibit D). The Complaint alleges that Plaintiff is the holder of copyrights for certain adult pictures and that Defendant is "stealing these works on a grand scale." The Complaint alleges that Doe has infringed on Plaintiff's copyright over an extended period of time and infringed as to 28 separate works. <u>See</u> Complaint ¶¶ 1-4.

The Complaint identifies Doe as the subscriber to the IP address 151.202.19.143. <u>See</u> Complaint ¶ 5.

The Complaint attaches as exhibit A, a chart that supposedly identifies the dates of

infringement by Doe. The chart spans the time period of October 3, 2018 to February 20, 2019, a period of more than four months. Though it is not clear why, the chart is not in chronological order. Notably, the Subpoena is solely predicated upon the subscriber of the IP address as to the first "work" on the chart, which is dated January 18, 2019, at about 2 a.m. Though the Complaint alleges that the holder of the IP address as to all 28 works is the same exact individual (which as explained below is an unsupported claim), Plaintiff has only served a subpoena as to the first work on the chart.

The chart also reflects that the same subscriber supposedly downloaded a movie at 1:59 a.m. on December 20, 2018 and then less than six minutes later downloaded another movie. See exhibit A to Complaint (works 3 and 15). The Complaint does not explain how the same subscriber could download "a complete copy of" two of Plaintiff's works, see Complaint ¶ 27, less than six minutes apart.

According to the Complaint, the subscriber of the IP address 151.202.19.143 is the same person that committed the copyright infringement as to all 28 works. See Complaint ¶¶ 4, 8.

On May 16, 2019, Plaintiff filed an ex parte motion to serve a third party subpoena on Verizon (docket # 6). On August 1, 2019, the Court issued an Order finding that good cause existed to grant Plaintiff expedited discovery (docket # 8). The Order cites to the Court's decision in Malibu Media, LLC v. Doe, 2016 U.S. Dist. LEXIS 112187 (E.D.N.Y. Aug. 23, 2016) and concludes that until further Order of the Court the matter shall remain litigated in the name of a John Doe defendant.

## III. ARGUMENT

For the exact reasons as set forth in the detailed and well-reasoned Strike 3 Decision, the Subpoena in this action should be quashed.

Exactly as in this action, at issue in the Strike 3 Decision was a motion to quash a subpoena served by Strike 3 seeking the name of a subscriber of an IP address. Notably, unlike many of the instances where Strike 3 submitted such a request without any opposition, the subscriber opposed the request and the court held two evidentiary hearings and considered extensive briefing. 2019 U.S. Dist. LEXIS 184513, at *1-*2.

The court even noted that on prior occasions -- without a full record before it -- the court had readily granted requests by Strike 3 to serve subpoenas. Id. at *3-*4, *15-*16.

As in this matter, in the Strike 3 Decision, Plaintiff alleged that the defendant committed multiple infringements over a period of many months, but only served a subpoena for the IP address of the subscriber on one particular date and time. Significantly, the court explained that the subscriber identified by the IP address resulting from the subpoena may not even be the same person as the other infringements alleged in the complaint:

> Thus, as to the exemplar complaint, even though the alleged infringement occurred on 31 occasions from December 3, 2017 to August 16, 2018, Strike 3's subpoena only asks for the subscriber's name on July 27, 2018. **Due to dynamic IP addresses, however, the subscriber identified in response to Strike 3's November 13, 2018 subpoena, may or may not be the same person who subscribed to the IP address on July 27, 2018.** After Strike 3's motion for expedited discovery is granted and its subpoena is served and responded to, the ISP identifies the current subscriber to the listed IP address. **Importantly, this is not necessarily the same person who subscribed to the IP address on July 27, 2018.**

Id. at *5-*6 (emphasis added).

The court then noted that even though Strike 3 alleges in its complaint that the subscriber of the IP address is the same exact person that infringed its copyright on multiple occasions, that Strike 3 actually acknowledged that the subscriber may not have downloaded its works:

> Although Strike 3's John Doe complaints name as the defendant the unidentified IP subscriber, Strike 3 acknowledges it does not know who infringed its works. Strike 3 also acknowledges it only has a "fairly good reason to believe that it is the subscriber or someone in the [household]." Strike 3 does not know who or

4

how many people live in the household and it "[h]as no idea if there's anyone else in the house." In addition, Strike 3 is not sure whether the subscriber lives at the location associated with the IP address. **Also, because of dynamic IP addresses, Strike 3 does not know for sure if the subscriber identified in response to its subpoena is the same subscriber at the time of the alleged infringement which occurred months earlier.**

**Despite its admitted lack of knowledge of who downloaded its works, whether the subscriber lives at the identified address, and who lives at the address, Strike 3's complaints unequivocally aver in conclusory fashion that the listed subscriber to the identified IP address directly infringed its copyrights.**

Id. at *9-*10 (citations to transcript omitted, emphasis added).

The court in the Strike 3 Decision made it clear that it was sympathetic of Strike 3's claims, noting that Plaintiff's works were copyright protected and that an entity whose works are copyrighted should have recourse against copyright infringers. The court also recognized that "a legion of cases" have refused to quash subpoenas served by Plaintiff. Id. at *16-*20, *27.

The court, however, found that it was appropriate to quash the subpoena because Strike 3's complaints are futile. The court found it significant that Strike 3 makes unequivocal assertions in its complaints that it does not know are true, such as the defendant was the individual who downloaded, copied and distributed its works:

Even if Strike 3's complaints pass muster under Rule 12(b)(6), Strike 3 pleads unequivocal statements of alleged facts that it does not know to be true. Strike 3 unequivocally avers that the John Doe IP subscriber "downloaded, copied, and distributed" its copyrighted works. Compl. ¶ 27.[1] Yet, however, Strike 3 acknowledges it is equally as likely the subscriber or someone in the household is to blame for the infringement. Strike 3 also acknowledges that despite its unequivocal averments it does not know for certain where the subscriber lives. **The fact that Strike 3 has to resort to making unequivocal statements of alleged facts <u>that it does not know to be true</u> in order to obtain expedited discovery, is troublesome and is a relevant fact the Court considers when it decides whether to grant Strike 3's discovery requests.**

**It appears to the Court that Strike 3 sacrifices the accuracy of its pleadings so**

---

1 Paragraph 27 of the Complaint in this matter likewise alleges that "Defendant downloaded, copied, and distributed" Plaintiff's copyrighted works.

**that it can bootstrap expedited discovery.** In other words, Strike 3 sacrifices accuracy for expediency. **This was effectively acknowledged by Strike 3's counsel who stated: "[w]e do say it's the subscriber [as the named defendant] because that's what we're going to need the subpoena to help us get the further investigation."** Strike 3's counsel also stated: "I think we're saying in our initial Complaint that the subscriber is going to get us to that infringer." Strike 3 acknowledges its complaints are filed for the "sole purpose" of enabling it to seek leave to conduct expedited discovery[.]" This Court is not the only Court troubled by Strike 3's pleadings.

Id. at *19-*32 (citations to transcript omitted, emphasis added).

The court further found it significant that it had (erroneously) assumed that Strike 3's subpoenas would serve to identify the name of the IP subscriber when Plaintiff's works were infringed. The court explained that Plaintiff's subpoena only seeks to identify the infringer of one of its works without any explanation as to how it chose the work that is the subject of the subpoena. While the complaint identified 31 infringements over an approximately eight month period, the subpoena only sought the name of the subscriber on one particular date. Most importantly, the court explained that the person identified in response to the subpoena may not even be the actual person who held the IP address on the particular date set forth in the subpoena because IP address are dynamic and because at times different people can have the same IP address:

> The problem with Strike 3's subpoenas is that Strike 3 does not reveal that the subscriber identified by its subpoenas may not be the subscriber when its work was infringed. For example, as to the exemplar complaint Strike 3 alleges 31 works were infringed from December 3, 2017 to August 16, 2018. Strike 3's November 13, 2018 subpoena only asks for the name of the IP subscriber on July 27, 2018. In its motions Strike 3 does not mention that due to dynamic IP addresses the name of the subscriber identified by Strike 3's November 13, 2018 subpoena may not be the person who subscribed to the same address on July 27, 2018. **This information is not revealed by Strike 3 even though Strike 3 recognizes there are a limited number of IP addresses, the addresses are dynamic, and they therefore change. Strike 3 knows that at different times different people can have the same IP address.**

Id. at *33-*34 (emphasis added).

In concluding that it was appropriate to quash the subpoena, the court explained that even

though Strike 3 alleges that its works were infringed by the defendant on 31 separate occasions, its subpoena only seeks the subscriber as to one instance of infringement. The court then noted that it erroneously assumed that the IP address set forth in the subpoena was permanent and belonged to just one individual. After the hearing and extensive briefing, the court recognized that an IP address changes:

> Strike 3 could conduct a more diligent search if it asked for the subscriber's name on the date all 31 of its works were downloaded (or a representative number) instead of just a single date. However, Strike 3 does not do this because of cost. Further, even if the names of the IP subscribers for all 31 works are identified, the names are not necessarily the subscribers on the dates of the infringing activity. **In the past, when the Court granted Strike 3's discovery motions, it incorrectly assumed the name of the subscriber identified by Strike 3's subpoenas was the same subscriber on the date of the alleged infringement. The Court also incorrectly assumed the listed IP address was permanent and only belonged to one person. The Court now knows this is not necessarily the case.** It is implausible that Strike 3 is not aware of the substantial body of case law discussing the problems with dynamic IP addresses.

Id. at *36-*37 (emphasis added).

Moreover, as the court recognized, a hacker can hide his/her own IP address and use someone else's IP address. Id. at *38.

Finally, the court pointed out the prejudice to subscribers in not quashing the subpoena. Id. at *45.

The James Orenstein Decision is also informative. In the James Orenstein Decision, the court refused to grant Strike 3's motion to issue subpoenas. One of the keys to the James Orenstein Decision was the court's concern that it was a virtual certainty that Strike 3 had no desire to actually litigate the matter once it received the subpoena response. The court explained that on more than a third of the cases for which Plaintiff received a subpoena response it could not "satisfy itself that the subscriber was actually the infringer." The court succinctly noted that in an alarming number of cases Strike 3 acknowledged that the subscriber is not the infringer:

the fact that in more than a third of the resolved cases (50 out of 143), Strike 3 could not satisfy itself that the named defendant was actually the alleged infringer further undermines the proposition that good cause exists to allow expedited discovery. Strike 3 captions each of its cases as Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address [number]. Thus, in each case the named defendant is the subscriber of internet service whose identity will be revealed in the records Strike 3 hopes to subpoena. But Strike 3 acknowledges that in many cases, the "Doe" it has sued -- that is, the subscriber -- will prove to be someone other than the person who engaged in the allegedly unlawful conduct the Complaint describes. **And as it has now revealed in response to my inquiry, the proportion of such unprovable cases is alarmingly high.** It is thus apparent that Strike 3 is deliberately asserting claims in a scattershot fashion against a broad array of individuals simply because it is confident that many of them will be liable -- even if almost as many of them are not. Such pleading seems wholly inconsistent with the requirement that a plaintiff may not file a complaint for an improper purpose and that each of a plaintiff's claims must be predicated on a good faith belief in the claim's merit.

331 F.R.D. at 19, 2019 U.S. Dist. LEXIS 69632, at **12 (emphasis added).

As in the above cases, it is clear that the Subpoena should be quashed. Indeed, just like in the Strike 3 Decision, the Subpoena seeks information as to the subscriber for an IP address for a specific date and time pertaining to an alleged single instance of infringement. The Complaint, however, alleges unequivocally that the subscriber is the actual infringer and that Defendant has infringed Plaintiff's copyrights on the 28 occasions set forth in the Complaint. As the Strike 3 Decision makes clear given, among other things, the reality that an IP address is dynamic, Strike 3 is well aware that its claims are unsupported.

Accordingly, the Subpoena should be quashed.

To extent that Strike 3 relies upon this Court's decision in Malibu Media, LLC, such reliance would be misplaced. In Malibu Media, LLC, this Court addressed a similar issue but with a completely different plaintiff than Strike 3. In the Strike 3 Decision, the court rendered its decision after two evidentiary hearings where it took testimony from three witnesses on behalf of Strike 3: Emillie Kennedy, who is Strike 3's general counsel; John Bunting, who is a forensics consultant; and John S. Pasquale, Sr., who is a project manager for a cyber security firm. 2019

U.S. Dist. LEXIS 184513, at *2, n.1.[2]

In addition, in <u>Malibu Media, LLC</u>, Malibu Media demonstrated to the Court that the infringement was done by the same exact IP address and "also from the same computer." 2016 U.S. Dist. LEXIS 112187, at *26. In other words, Malibu Media demonstrated that the IP address was static (i.e. not changing) and that the infringement was done by the same computer. In contrast, in the Strike 3 Decision, Strike 3 acknowledged that IP addresses are dynamic and that "at different times different people can have the same IP address." 2019 U.S. Dist. LEXIS 184513, at *34 ("Strike 3 recognizes there are a limited number of IP addresses, the addresses are dynamic, and they therefore change. Strike 3 knows that at different times different people can have the same IP address.").

Defendants submits that just like the court did in the Strike 3 Decision, 2019 U.S. Dist. LEXIS 184513, at *15-*16, the Court should consider "new relevant information" and "new persuasive case law" and hold that the Subpoena should be quashed.

Finally, even if the Court denies the motion to quash, it is respectfully requested that the Court should permit Defendant to proceed anonymously in this matter. Indeed, even in cases where courts have denied motions to quash subpoenas issued under similar circumstances, the courts have granted this relief. <u>See, e.g.</u>, <u>Malibu Media, LLC</u>, 2016 U.S. Dist. LEXIS 112187, at *36 ("Defendant may litigate this action anonymously through the close of discovery."); <u>Strike 3 Holdings, LLC v. Doe</u>, 2019 U.S. Dist. LEXIS 80905, at *7 (S.D.N.Y. May 14, 2019) ("Defendant's request to proceed anonymously is granted."); <u>Strike 3 Holdings, LLC v. Doe</u>, 2019 U.S. Dist. LEXIS 191709, at *3-*4 (M.D. Fla. Nov. 5, 2019) (noting that Strike 3 did not even oppose the defendant's motion to proceed anonymously").

---

2 John S. Pasquale also provided a declaration in this matter in support of Plaintiff's ex parte motion to issue the subpoena. <u>See</u> docket # 6-4.

# IV. CONCLUSION

For the reasons set forth above, Doe requests that the Court quash the Subpoena and award such further and other relief as the Court deems appropriate.

Dated: November 15, 2019

Respectfully submitted,
HOGAN & CASSELL, LLP
Attorneys for Defendant

By: _____
Michael Cassell
500 North Broadway, Suite 153
Jericho, New York 11753
Tel. (516) 942-4700
Fax (516) 942-4705
Email mcassell@hogancassell.com

# EXHIBIT A

# UNITED STATES DISTRICT COURT

for the
Eastern District of New York

| | | |
|---|---|---|
| STRIKE 3 HOLDINGS, LLC | *Plaintiff* | Civil Action No.: 2:19-cv-02481-SJF-SIL |
| v. | | |
| John Doe subscriber assigned IP address 151.202.19.143, | *Defendant.* | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Verizon
c/o    VSAT – Subpoena Compliance Team
180 Washington Valley Road
Bedminster, NJ 07921
T: (800) 451-5242
F: (325) 949-6916
Email: verizonlegalprocesscompliance@verizon.com

Serve: **Certified Mail (Courtesy Copy via Email)**

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

Please produce documents identifying the **name AND address ONLY** of the defendant John Doe listed in the below chart **AFTER** expressly following the instructions and limitations outlines by the Court in the attached Order.

| IP Address | Date/Time, UTC |
|---|---|
| 151.202.19.143 | 01/18/2019 02:00:14 |

| | | |
|---|---|---|
| **Attn:**   **Jacqueline M. James, Esq.** **Place:**   The James Law Firm, PLLC 445 Hamilton Avenue, Suite 1102 White Plains, NY 10601 T: (914) 358-6423 F: (914) 358-6424 Email: jjames@jacquelinejameslaw.com | **Date and Time:** December 16, 2019 @ 5:00 PM EST |

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| | | |
|---|---|---|
| Place: | | Date and Time: |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    08/08/2019

               *CLERK OF COURT*

                             OR

_____       /s/ Jacqueline M. James

    *Signature of Clerk or Deputy Clerk*       *Attorney's Signature*

The name, address, e-mail, and telephone number of the attorney representing *Plaintiff*, who issues or requests this subpoena, are:

Jacqueline M. James, Esq.
The James Law Firm, PLLC
445 Hamilton Avenue, Suite 1102, White Plains, NY 10601
T: (914) 358-6423; F: (914) 358-6424; Email: jjames@jacquelinejameslaw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
(A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT B

No *Shepard's* Signal™
As of: November 14, 2019 12:45 AM Z

# *Strike 3 Holdings, LLC v. Doe*

United States District Court for the District of New Jersey, Camden Vicinage

October 24, 2019, Decided; October 24, 2019, Filed

Civil No. 18-2674 (JHR/JS); Civil No. 18-12585 (NLH/JS); Civil No. 18-12586 (JHR/JS); Civil No. 18-14114 (JHR/JS)

**Reporter**
2019 U.S. Dist. LEXIS 184513 *; 2019 WL 5446239

STRIKE 3 HOLDINGS, LLC, Plaintiff, v. JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 173.71.68.16, Defendant.STRIKE 3 HOLDINGS, LLC, Plaintiff, v. JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 76.116.36.190, Defendant.STRIKE 3 HOLDINGS, LLC, Plaintiff, v. JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 76.116.76.28, Defendant.STRIKE 3 HOLDINGS, LLC, Plaintiff, v. JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 73.160.162.60, Defendant.

**Counsel:** [*1] For STRIKE 3 HOLDINGS, LLC, Plaintiff (1:18-cv-02674-JHR-JS, 1:18-cv-12585-NLH-JS, 1:18-cv-12586-JHR-JS, 1:18-cv-14114-JHR-JS): JOHN C. ATKIN, THE ATKIN FIRM, LLC, MORRISTOWN, NJ.

For JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 73.160.162.60, Defendant (1:18-cv-14114-JHR-JS): PAUL H. SCULL, JR., LEAD ATTORNEY, THE LAW OFFICE OF PAUL H. SCULL JR., PENNSVILLE, NJ.

**Judges:** JOEL SCHNEIDER, United States Magistrate Judge.

**Opinion by:** JOEL SCHNEIDER

# Opinion

This Opinion addresses whether to grant Strike 3 Holdings, LLC ("Strike 3") leave to conduct expedited discovery in its uniform "John Doe" copyright infringement cases. Strike 3 owns the copyrights to its adult entertainment movies, i.e., pornography. In contravention of the normal course of discovery, Strike 3 seeks leave to serve subpoenas before a *Fed.R.Civ.P.26(f)* conference in order to identify alleged "John Doe" copyright infringers of its movies. Strike 3 argues that unless its motions are granted it is not able to identify infringers and stop infringement. This Opinion adds to the mountain of case law on the issue.

After a deep dive into Strike 3's practices, including two evidentiary hearings and extensive briefing, the Court concludes that Strike 3's requests for expedited discovery [*2] are DENIED. The Court finds that Strike 3 has not established good cause to take the requested discovery and the discovery is unreasonable under the present circumstances.[1]

The most fundamental basis of the Court's decision is its conclusion that, as pleaded, Strike 3's complaints are futile. The Court denies Strike 3 the right to bootstrap discovery based on a complaint that does not pass muster under *Fed.R.Civ.P.12(b)(6)*. Further, even if Strike 3 pleads a cognizable copyright infringement claim, the Court would still deny its requests for expedited discovery. Good cause does not exist because: (1)

---

[1] Throughout this Opinion the Court will refer to an exemplar complaint or case. This refers to C.A. No. 18-14114(JHR/JS) which is representative of all of Strike 3's complaints. Strike 3 acknowledges its complaints are uniform. TR1 12:15-19. The Court held two evidentiary hearings regarding Strike 3's discovery requests. The transcript from the first hearing will be referred to as "TR1" and the second "TR2." Emilie Kennedy, Esquire, Strike 3's General Counsel, John Bunting, forensics consultant, and John S. Pasquale, Sr. Project Manager with 7 Riber Systems, LLC, a cyber security firm, testified for Strike 3.

Strike 3 bases its complaints on unequivocal affirmative representations of alleged facts that it does not know to be true; (2) Strike 3's subpoenas are misleading and create too great of an opportunity for misidentification; (3) the linchpin of Strike 3's good cause argument, that expedited discovery is the only way to stop infringement of its works, is wrong; (4) Strike 3 has other available means to stop infringement besides suing individual subscribers in thousands of John Doe complaints; (5) the deterrent effect of Strike 3's lawsuits is questionable; (6) substantial prejudice may inure to subscribers [*3] who are misidentified; and (7) Strike 3 underestimates the substantial interest subscribers have in the constitutionally protected privacy of their subscription information. On balance, therefore, the Court finds that the overall administration of justice and the prejudice to subscriber defendants outweighs Strike 3's interest in expedited discovery.

It is not lost on the Court that its ruling may make it more difficult for Strike 3 to enforce its copyrights against potential infringers. However, as the Third Circuit recently stated, "[c]ourts must enforce the law even when the results seem inequitable." *Diabate v. Attorney General of U.S.A., No. 18-3397, 2019 U.S. App. LEXIS 30269, 2019 WL 5061399, at \*1 (3d Cir. Oct. 9, 2019)*. The Court is aware that it has granted expedited discovery in past cases filed by Strike 3 and other copyright frequent filers.[2] However, as was famously said, the Court "see[s] no reason why it should be consciously wrong today because [it] was unconsciously wrong yesterday." *Massachusetts v. United States, 333 U.S. 611, 639-40, 68 S. Ct. 747, 92 L. Ed. 968, 1948-1 C.B. 117 (1948)* (J. Jackson, dissenting opinion). Since its previous

Orders were entered, new relevant case law has been published and the Court has learned new material information that was not previously presented, all of which is discussed in this Opinion.[3]

## Background

### 1. General Background

Strike 3 was formed in 2015 and is the intellectual property holding company of General Media Systems ("GMS"). GMS was founded in 2014 and produces and distributes adult entertainment on its websites. According to GMS's Chief Creative Officer, it is the most pirated adult content in the world. Decl. of Greg Lansky ¶25, Doc. No. 4-2. Strike 3 started filing its copyright complaints in October 2017 (id. 10-11) and has filed over 3,000 complaints to date. As of June 2019, Strike 3 filed 311 cases in New Jersey. More than half of the cases (161) have been dismissed without prejudice for various reasons. Strike 3 Letter Brief ("LB") at 2-5 (June 11, 2019). Like many of its colleagues in this and other jurisdictions, the Court has managed many of Strike 3's cases. Strike 3's modus operandi is essentially the same in all of its cases. Strike 3 files "John Doe" complaints naming unidentified assigned subscribers to an Internet Protocol ("IP") address who have been identified by its contractor as an infringer on the BitTorrent ("BT") network. BT is a software protocol that allows users to distribute [*5] data through peer-to-peer networks. The BT network permits users to download, copy and distribute Strike 3's movies. The only pleaded connection in Strike 3's complaints between the "John Doe" defendant and the alleged infringement is that the "John Doe" is the subscriber to the listed IP address. Strike 3 acknowledges it does not know if the subscriber or someone else downloaded its works.

After filing its complaint, Strike 3 files ex parte motions for expedited discovery requesting leave

---

[2] See, e.g., Strike 3 Holdings, LLC. V. John Doe..., C.A. No. 17-12784 (JHR/JS), 2018 U.S. Dist. LEXIS 68550, 2018 WL 2010422 (D.N.J. April 24, 2018); Voltage Pictures [*4] v. John Does 1-60, C.A. No. 12-6885 (RMB/JS), 2013 U.S. Dist. LEXIS 155356, 2013 WL 12406868 (May 31, 2013); see also Plastic the Movie Limited v. John Doe Subscriber, C.A. No. 15-2446 (JHR/JS), 2015 U.S. Dist. LEXIS 103717, 2015 WL 4715528 (D.N.J. August 7, 2015) (denying motion to quash subpoena directed to Comcast requesting the identity of owner of listed IP address).

[3] The Court has the power to revisit its prior interlocutory decisions and to undermine an earlier conclusion. *PIRG v. Magnesium Elektron, Inc., 123 F.3d 111, 116-17 (3d Cir. 1997)*.

to serve a subpoena on the John Doe's Internet Service Provider ("ISP"), i.e., Comcast, Yahoo, Verizon, etc. Although multiple infringements are listed in its complaints, Strike 3's subpoenas only ask for the name of the IP subscriber for one infringement. Thus, as to the exemplar complaint, even though the alleged infringement occurred on 31 occasions from December 3, 2017 to August 16, 2018, Strike 3's subpoena only asks for the subscriber's name on July 27, 2018. Due to dynamic IP addresses, however, the subscriber identified in response to Strike 3's November 13, 2018 subpoena, may or may not be the same person who subscribed to the IP address on July 27, 2018. After Strike 3's motion for expedited [*6] discovery is granted and its subpoena is served and responded to, the ISP identifies the current subscriber to the listed IP address. Importantly, this is not necessarily the same person who subscribed to the IP address on July 27, 2018. Strike 3 then conducts an additional investigation and either settles, dismisses, or amends its complaint to specifically name the IP subscriber. In the past, the Court has granted Strike 3's motions requesting expedited discovery. Recently, however, numerous courts have delved deeper into Strike 3's complaints, discovery requests, and practices, leading the Court to reexamine the propriety of granting Strike 3's motions. The effort has been long and arduous but enlightening and worthwhile.

The genesis of this Opinion is the November 6, 2018 Opinion of the Honorable Royce L. Lamberth, U.S.D.J. *Strike 3 Holdings, LLC v. John Doe, 351 F. Supp.3d 160 (D.D.C. 2018)*, on appeal, No. 18-7188 (Dec. 19, 2018). In a blistering Opinion, Judge Lamberth denied Strike 3's ex parte request for expedited discovery akin to the motions at issue herein. Judge Lamberth accused Strike 3 of being a "copyright troll," of using technology that is "famously flawed," of preying on "low-hanging fruit," of not caring whether the "defendant actually [*7] did the infringing," and flooding the courthouse "with lawsuits smacking of extortion." The Opinion raised red flags regarding Strike 3's lawsuits that caused this Court to explore the issue further.

In Order to get to the bottom of the matter, the Court issued an Order to Show Cause ("OSC") to Strike 3 directing it to show cause why the Court should not adopt and follow Judge Lamberth's Opinion and Order and deny Strike 3's discovery motions.[4] Since that time, the Court has received extensive briefs and background materials and held two evidentiary hearings.[5] The Court will summarize what it has learned and explain in detail why Strike 3's requests for expedited discovery are denied.

2. Strike 3's Investigation and John Doe Complaints

Strike 3's infringement investigation starts with IPP International UG ("IPP") located in Germany. Strike 3 hired IPP to track the infringement of its copyrights across the BT network. TR1 15:5-19. IPP does this by crawling the BT file distribution network and establishing a direct connection with the alleged infringer's IP address.

An IP address is a unique number used by a computer to access the internet. In order to interact with other computers attached [*8] to the internet, a computer must be assigned an internet protocol or IP address. An IP address is a string of up to twelve numbers separated by dots — for example 73.160.162.60. *State v. Reid, 194 N.J. 386, 390, 945 A.2d 26 (2008)*. "IP addresses can be dynamic (the number changes each time the computer accesses the Internet) or static (the number remains the same each time the computer accesses the Internet).". *United States v. Norris, 938 F.3d 1114, 1116 n. 2 (9th Cir. 2019)*. After IPP identifies an IP address that is used by an infringer

---

[4] At the time the OSC was issued six (6) Strike 3 cases were pending before the Court. Since that time, Strike 3 voluntarily dismissed two (2) of the cases. The remaining four (4) cases are stayed pending the issuance of this Opinion. Throughout the relevant hearings, the Court has used C.A. No. 18-14114 (JHR/JS) as an exemplar. The case will be discussed throughout this Opinion.

[5] Strike 3's main spokesperson was Emille Kennedy, Esquire, its General Counsel. Kennedy is responsible for coordinating Strike 3's nationwide litigation and has hands-on familiarity with its policies and practices. Kennedy has the most broad-based knowledge concerning Strike 3's litigation and is authorized to speak on behalf of the company. TR2 2:11-19. Kennedy approves every filed complaint. TR1 13:16-22.

to distribute Strike 3's copyrighted works, it downloads pieces of Strike 3's works from the alleged infringer. IPP records the infringer's IP address, the version of the BT software used, and the date and time of the infringement. In addition to identifying Strike 3's works that are downloaded, IPP identifies the ISP and other content downloaded using the subscriber's IP address. TR1 12:1-10. IPP records everything in a PCAP, which stands for "packet capture" and is a forensically sound interface for recording network traffic. TR1 17:1-22. Decl. of Tobias Fisher at ¶8, Doc. No. 4-3. IPP sends this data to Strike 3 on a monthly basis. TR1 15:24 to 16:25.

According to Strike 3, it only tries to "stop the worst infringers."[6] TR1 18:4-11. This accounts for why Strike [*9] _3 may be aware that a particular IP address is being used to infringe its works for a significant period of time before a complaint is filed. For example, although the exemplar complaint was filed on September 20, 2018, the subscriber's infringement allegedly occurred on 31 separate occasions from December 3, 2017 to August 16, 2018. Thus, Strike 3 was aware of the ongoing infringement of its movies for at least nine (9) months before it filed its complaint.

After Strike 3's data analytics contractor identifies a serial infringer, Strike 3 runs the IP address through Maxmind, a geolocation technology. Maxmind gives Strike 3 an approximate location of where the IP address is located.[7] Id. 49:6-1; 75:11-20. Strike 3 uses the Maxmind result to identify the appropriate jurisdiction in which to file suit. In sum, therefore, the only information Strike 3 has when it files its John Doe complaints is the infringing IP address, the identity of the ISP, the date and time of the infringement, the approximate location of the infringer, the number of works infringed, and other content downloaded.

Although Strike 3's John Doe complaints name as the defendant the unidentified IP subscriber, Strike

3 [*10] acknowledges it does not know who infringed its works. Strike 3 also acknowledges it only has a "fairly good reason to believe that it is the subscriber or someone in the [household]." TR1 20:21-22. Strike 3 does not know who or how many people live in the household (TR1 22:7-22) and it "[h]as no idea if there's anyone else in the house." TR2 92:13-19. In addition, Strike 3 is not sure whether the subscriber lives at the location associated with the IP address. TR2 29:3-4. Also, because of dynamic IP addresses, Strike 3 does not know for sure if the subscriber identified in response to its subpoena is the same subscriber at the time of the alleged infringement which occurred months earlier.

Despite its admitted lack of knowledge of who downloaded its works, whether the subscriber lives at the identified address, and who lives at the address, Strike 3's complaints unequivocally aver in conclusory fashion that the listed subscriber to the identified IP address directly infringed its copyrights. This is evidenced by the following averments in the exemplar complaint which named the defendant as "John Doe subscriber assigned IP Address 73.160.162.60":

> 1. "Defendant used the BitTorrent file [*11] network to illegally download and distribute plaintiff's copyrighted motion pictures." ¶ 23.
> 2. "While Defendant was infringing, . . . ." ¶ 25.
> 3. "Defendant downloaded, copied, and distributed a complete copy of each of plaintiff's works without authorization." ¶ 27.
> 4. "Defendant's infringement is continuous and ongoing." ¶ 30.
> 5. "Defendant copied and distributed the constituent elements of plaintiff's works using the BitTorrent protocol." ¶ 36.

Strike 3 makes these unequivocal averments even though it recognizes the subscriber may not have downloaded its works. TR1 20:23-25 to 21:1; 21:8-16, 21-22. After Strike 3 files its complaint, it files a motion for expedited discovery asking for leave to serve a subpoena on the identified ISP. Strike 3 argues this is necessary since only the ISP can match the name of the customer to an IP address. After Strike 3 receives the name of the currently listed subscriber to the IP address in question, it

---

[6] Generally, Strike 3 looks for IP addresses that infringe a minimum of 25 works over a couple of months. TR1 19:10-14.

[7] Strike 3's consultant used the phrase "general region." TR1 151:20.

conducts an additional investigation and decides whether to amend the complaint to name the subscriber or dismiss the complaint.[8] In the interim, Strike 3 may also settle with the subscriber or someone else.

## Discussion

### 1. The Standard to Obtain Expedited [*12] Discovery

Critical to the Court's ruling is the standard to use when deciding if expedited discovery is appropriate. Importantly, the fact that the requested discovery is relevant is not determinative. Instead, in order to decide if good cause exists to grant expedited discovery the Court examines all relevant considerations. Stated another way, the "totality of the circumstances."

Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." However, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). District courts possess broad discretion in the management of the discovery process and can expedite or otherwise alter its timing or sequence. See id. Unlike most other discovery provisions in the Federal Rules, Rule 26(d) does not give any guidance as to the standard to use to determine if expedited discovery is appropriate. Techtronic Indus. N. Am., Inc. v. Inventek Colloidal Cleaners LLC, C.A. No. 13-4255 (NLH/JS), 2013 U.S. Dist. LEXIS 113956, 2013 WL 4080648, at *1 (D.N.J. Aug. 13, 2013).[9]

Courts in this District have applied one of two standards to assess whether expedited discovery is appropriate. See Sawhorse Enterprises, Inc. v.

Church & Dwight Co., C.A. No. 12-6811 (FLW), 2013 U.S. Dist. LEXIS 48155, 2013 WL 1343608, at *2 (D.N.J. Apr. 3, 2013). The first is a more stringent standard, "akin to that of a preliminary injunction," [*13] known as the Notaro test.[10] Id.; see also Gucci America Inc. v. Daffy's, Inc., C.A. No. 00-4463, 2000 U.S. Dist. LEXIS 16714, 2000 WL 1720738, *5-6 (D.N.J. Nov. 14, 2000) (citing Notaro, 95 F.R.D. at 405). The second is the less stringent standard of "good cause" or "reasonableness," often referred to as the "good cause" test. See, e.g., Manny Film LLC v. Doe Subscriber Assigned IP Address 50.166.88.98, 98 F. Supp. 3d 693 (D.N.J. 2015); Techtronic, 2013 U.S. Dist. LEXIS 113956, 2013 WL 4080648, at *1. Courts in this District routinely apply the "good cause" test. See Strike 3 Holdings, LLC v. Doe, C.A. No. 19-16182(MCA)(MAH), 2019 U.S. Dist. LEXIS 143877, 2019 WL 3985628, at *2 (D.N.J. Aug. 23, 2019). In a previous case, this Court adopted the so-called "reasonableness" or "good cause" standard. Techtronic, 2013 U.S. Dist. LEXIS 113956, [WL] at *1. In other words, in order to decide if expedited discovery is appropriate, the Court looks at the totality of the circumstances and the balancing of the interests of the plaintiff and defendant. Better Packages, Inc. v. Zheng, C.A. No. 05-4477(SRO), 2006 U.S. Dist. LEXIS 30119, 2006 WL 1373055, at *3 (D.N.J. May 17, 2006) (the good cause test "weighs the need for expedited discovery by considering the overall administration of justice against the prejudice to the responding party."). The Court will apply this standard here.

Not surprisingly, the burden is on the moving party to show that expedited discovery is appropriate. Techtronic, 2013 U.S. Dist. LEXIS 113956, [WL] at *2. Good cause exists where the "need for expedited discovery, in consideration of the

---

[8] Strike 3 estimates that 35 to 40 percent of the time it decides to dismiss and not amend its complaints. TR1 59:2-8.

[9] Consequently, one author estimates "that courts have developed more than twenty standards for construing Rule 26(d)(1)." See Jesse N. Panoff, Rescuing Expedited Discovery from Courts & Returning It to FRCP 26(d)(1), 64 Ark. L. Rev. 651, 651 (2011)).

[10] The Notaro test requires the requesting party to demonstrate: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

administration of justice, outweighs the prejudice to the responding party." *Malibu Media, LLC v. John Doe, C.A. No. 16-942 (KM/MAH), 2016 U.S. Dist. LEXIS 32445, 2016 WL 952340, *1 (D.N.J. Mar. 14, 2016)* (citation **[*14]** omitted). A non-exclusive list of factors Courts typically examine are: (1) the timing of the request in light of the formal start to discovery; (2) whether the request is narrowly tailored; (3) the purpose of the requested discovery; (4) whether the discovery burdens the defendant; and (5) whether the defendant can respond to the request in an expedited manner. See *Better Packages, 2006 U.S. Dist. LEXIS 30119, 2006 WL 1373055, at *3.* In ruling on a motion for expedited discovery, courts consider "the entirety of the record . . . and the reasonableness of the request in light of all of the surrounding circumstances[.]".[11] *Better Packages, Inc., 2006 U.S. Dist. LEXIS 30119, 2006 WL 1373055, at *3* (citation and quotation omitted).

For good reason, Courts apply "careful scrutiny when plaintiffs make [discovery] requests ex parte." *Strike 3 Holdings, LLC v. Doe, 331 F.R.D. 14, 16 (E.D.N.Y. 2019)* (citation and quotation omitted). This is understandable since expedited discovery is the exception rather than the norm. *Techtronic, 2013 U.S. Dist. LEXIS 113956, [WL], at *2*; *Columbine Ins. Co. v. Seecandy.com, 185 F.R.D. 573, 577 (N.D. Cal. 19999)* (expedited discovery is "rare"). Further, this Court noted in Techtronic: "[s]ince expedited discovery upsets the normal orderly progression of discovery, there should be a good reason to order it to occur. Otherwise, parties will expect expedited discovery in every case."; see also *Leone v. Towanda Borough, C.A. No. 3:12-0429, 2012 U.S. Dist. LEXIS 47594, 2012 WL 1123958, at *3 (M.D.Pa. Apr. 4, 2012)* ("[E]x parte motions are so inherently **[*15]** unfair that such relief should be granted only in the rarest of circumstances."). In addition, if not policed properly, ex parte expedited discovery may create an irresistible temptation for trickery and gamesmanship.

Plaintiff asks the Court to analyze its request for expedited discovery using the Second Circuit's five-factor test found in *Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2nd. Cir. 2010)*.[12] Id. at 3. The Court declines Strike 3's request to pigeonhole the Court's discretion. The Arista standard has not been adopted by the Court and is not typically used in this District. Further, as has been noted by at least one court, the utility of the *Arista* standard is limited. *Strike 3 Holdings, LLC, 331 F.R.D. at 17.* In any event, the Court's ruling would be the same even if the Court followed Arista. For the reasons to be explained in detail, the Court finds that Strike 3 fails to establish good cause for expedited discovery under the "good cause" or Arista standard. The Court's prior Orders were founded upon material misconceptions concerning Strike 3's allegations and the underlying technological proof submitted in support of Strike 3's motions. Further, new relevant information has been elicited that the Court was not aware of at the time it issued its previous Orders. **[*16]** In addition, new persuasive case law has been published. Ultimately, the Court agrees with Judge Lamberth that Strike 3's expedited discovery requests should be denied, but its reasoning is a bit different.

2. Underlying Assumptions

The Court deems it important to clarify several assumptions that underlie its decision so there is no misunderstanding about its reasoning. First, the fact that Strike 3 is involved in the adult entertainment business is irrelevant to the Court's decision. Unless Congress or the courts carve out an exception for pornography, which has not been done to date, Strike 3's lawful copyrights deserve as much or as little protection as the law provides. See *Strike 3 Holdings, LLC v. Doe, No. 18-Cv-2648 (VEC), 2019 U.S. Dist. LEXIS 587, 2019 WL 78987, at *4 (S.D.N.Y. Jan. 2, 2019)* (stating that

---

[11] See *Gucci, 2000 U.S. Dist. LEXIS 16714, 2000 WL 1720738, *6* (applying the Notaro factors upon finding "the allegations of the complaint were without basis" and calling into question plaintiff's "real motive" in the lawsuit").

[12] The five "principal factors" discussed in Arista are: (1) the concreteness of plaintiff's showing of a prima facie claim of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the need for the subpoenaed information to advance the claim; and (5) the objecting party's expectation of privacy. See *Arista, 604 F.3d at 119.*

Strike 3's "interest in protecting its copyrighted material from infringement . . . is not lessened by the salacious content of the material."). Two, no one can reasonably dispute that an entity whose copyrights are infringed should have recourse against the infringer. Nonetheless, as discussed herein, a legal remedy does not exist for every wrong. Strike 3 is not entitled to relief simply because it was wronged. Three, the Court acknowledges that the information [*17] Strike 3 requests is relevant under Fed. R. Civ. P. 26(b)(1). Even if an IP subscriber is not the infringer, he/she is likely to know relevant information regarding who used their internet access. Nonetheless, relevancy is not the touchstone to grant expedited discovery. If it was, expedited discovery could become the rule rather than the exception. Four, even though numerous cases discuss the fact that Strike 3 has or may engage in abusive litigation practices, the Court has not seen evidence that this occurred in its cases.[13]

### 3. Good Cause Does Not Exist for Expedited Discovery Because Strike 3 Does Not Plead a Cognizable Claim, i.e., its Complaints are Futile

The most fundamental reason the Court denies Strike 3's request for expedited discovery, and why the Court concludes its discovery requests are not reasonable, is that Strike 3 does not plead a cognizable claim in its complaints. It would be anomalous to authorize discovery based on a John Doe complaint that does not pass muster under Fed. R. Civ. P. 12(b)(6), in order to permit Strike 3 to name an individual subscriber who then files a meritorious motion to dismiss. Especially in the John Doe context where a complaint must be carefully scrutinized and a viable defendant is [*18] not present to challenge the complaint, it is unreasonable to authorize Strike 3 to bootstrap discovery onto a futile complaint. This is not consistent with the guidepost that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

The Court understands that in the present context it is not deciding a motion to dismiss. However, if the Court did not examine the futility of a John Doe complaint it would create too great of an opportunity for trickery and gamesmanship.[14] Further, in the context of deciding whether expedited discovery should be granted, futility is a relevant consideration in a totality of the circumstance analysis. The Court's sentiment is supported by other opinions. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (discovery to identify a defendant is not appropriate when "the complaint would be dismissed on other grounds."); Breaking Glass Pictures, LLC v. John and Jane Does 118-162, et al., No. CV-13-00600-PHX-ROS; 2013 U.S. Dist. LEXIS 106565, 2013 WL 3930474, at *2 (D. Ariz. July 29, 2013) ("Early discovery is not appropriate when the complaint would be dismissed on other grounds."); Criminal Productions, Inc. v. Doe, Case No. 16-cv-2352 WQH (JLB), 2016 U.S. Dist. LEXIS 154381, 2016 WL 6581850, at *1 (S.D. Cal. Nov. 7, 2016) (citation and quotation omitted) [*19] (in order to decide if good cause exists to grant expedited discovery, the plaintiff "should establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss.").

Turning to the viability of Strike 3's form complaints, the Court finds that, as pleaded, Strike 3's complaints are futile. In order to make out a prima facie claim of copyright infringement two elements must be met: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are the original. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). The Court does not take issue with the first element. However, Strike 3's complaints do not satisfy the second element.

Scores of cases address whether Strike 3's form complaints pass muster. Admittedly the case law is split. The Court recognizes that whether by virtue of inertia or some other reason, the majority view is that at least at the pleading stage of a case, Strike

---

[13] To be clear, the Court cannot vouch that this has not occurred. The Court can only say it has no knowledge this occurred.

[14] To be sure, the Court is not saying this occurred here.

3's complaints withstand dismissal.[15] However, although Strike 3 can cite to a legion of cases upholding its John Doe complaints, a substantial number of cases take a contrary view. The Court sides with the cases that hold it is not sufficient to merely allege in a pleading that the defendant [*20] is a subscriber of an IP address traced to infringing activity. Consequently, the Court will not authorize Strike 3 to take discovery premised on a futile John Doe complaint.

In order to survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Importantly, a plaintiff's obligation to provide the grounds of his/her entitlement to relief requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action. Id. at 555. While the plausibility standard is not a probability requirement, "a complaint must show more than a sheer possibility that the defendant acted unlawfully." Id. at 678. Facts merely consistent with a defendant's liability fall short of a plausible entitlement to relief. Id. at 557.

Strike 3's complaints are devoid of facts sufficient to show it is entitled to relief from the named John Doe/IP subscriber. The only material fact pleaded in Strike 3's complaints is that the listed IP address is associated with the downloading of Strike 3's works and the John Doe is the subscriber of the address. All other [*21] material averments in Strike 3's complaints, e.g., that the John Doe subscriber downloaded Strike 3's works, are conclusory statements, not facts. If Strike 3's complaints are stripped of their conclusory statements, they are left with the notion that merely subscribing to an IP address that downloaded copyrighted works is sufficient to make out a cause of action for copyright infringement. This is not

sufficient. As stated in Twombly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown - that the pleader is entitled to relief." Twombly, 550 U.S. at 557.

Despite its lack of knowledge of who downloaded its works, Strike 3 argues its complaints pass muster because it is plausible the IP subscriber was the infringer. For the reasons just discussed, the Court disagrees. No Third Circuit decision addresses the pleading issue presented by Strike 3's complaints. Importantly, however, the only Circuit Court decision on point supports the Court's holding. See Cobbler Nevada, LLC v. Gonzales, 901 F.3d 1142, 1145 (9th Cir. 2018). In Cobbler, the Ninth Circuit decided "whether a bare allegation that a defendant is the registered subscriber of an [IP] address associated with infringing [*22] activity is sufficient to state a claim for direct contributory infringement." Id. at 1144. Like this case, the only allegation connecting Gonzales to infringing activity was that Gonzales was the registered owner of the IP address associated with the alleged infringement. In affirming the District Court's dismissal of the plaintiff's complaint, the Court wrote:

> The direct infringement claim fails because Gonzales' status as the registered subscriber of an infringing IP address, standing alone does not create a reasonable inference that he is also the infringer. Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle. Plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer.

Id. at 1145.

The complaint in Cobbler is similar to Strike 3's form complaints in that the only connection between the John Doe defendant and the alleged infringement is that the defendant is the registered internet subscriber. This is not enough to plead a valid claim. As noted in Cobbler:

> This is a situation where a complaint pleads facts that are merely consistent with

---

[15] Recent representative cases taking a position contrary to that of this Court are Strike 3 Holdings, LLC v. John Doe, 1:18-cv-01490 EAW, 2019 U.S. Dist. LEXIS 60811, 2019 WL 1529339 (W.D.N.Y. Apr. 8, 2019) and Strike 3 Holdings, LLC v. John Doe, No. 19-cv-00723-JCS, 2019 U.S. Dist. LEXIS 113919, 2019 WL 2996428 (N.D.Cal. July 9, 2019).

defendant's liability **[\*23]** . . . stopping short of the line between possibility and plausibility of entitlement to relief . . . . The allegations are not enough to raise a right to relief above a speculative level.

_Cobbler, 901 F.3d at 1147_ (citations and quotations omitted). Cobbler is not an outlier and its holding has been followed in numerous cases. _Venice PI, LLC v. Huseby, No. C17-1160 TSZ, 2019 U.S. Dist. LEXIS 62856, 2019 WL 1572894, at \*1 (W.D. Wash. Apr. 11, 2019)_ ("[T]he Ninth Circuit made clear [in Cobbler] that a copyright infringement claim based merely on a defendant's status as the subscriber of an IP address associated with infringing activity does not cross the threshold of 'plausibility' that pleadings in federal court must satisfy."); _Malibu Media, LLC v. John Doe Subscriber, No. 18C450, 2018 U.S. Dist. LEXIS 207655, 2018 WL 6446404, at \*3 (N.D.Ill. Dec. 10, 2018)_ ("This Court agrees with the Ninth Circuit and those courts that have found that a plaintiff must allege more than simply the registration of an IP address to an individual in order to proceed against that individual for copyright infringement."); _Breaking Glass Pictures, LLC, 2013 U.S. Dist. LEXIS 106565, 2013 WL 3930474, at \*2_ (affirming decision denying expedited discovery and stating, "the complaint contains no factual allegations setting forth that the subscribers were, in fact, the individuals using the internet connection at the relevant time." Also finding plaintiff has not stated plausible **[\*24]** claims against the subscribers because although the complaint was consistent with the subscriber's liability for copyright infringement, the "allegations are also consistent with the subscribers not being liable."); _Strike 3 Holdings, LLC v. Doe, 351 F. Supp. 3d 160, 164 (D.D.C. 2018)_ ("Strike 3 could not withstand a 12(b)(6) motion in this case without resorting to far more intensive discovery machinations sufficiently establishing defendant did the infringing[.]"); _PTG Nevada, LLC v. Chan, No. 16C1621, 2017 U.S. Dist. LEXIS 6276, 2017 WL 168188, at \*2 (N.D.Ill. Jan. 17, 2017)_(collecting cases)("This Court agrees with those courts that have found that the plaintiff needs to allege more than just the registration of an IP address to an individual in order to proceed against that

individual for copyright infringement."); _In re BitTorrent Adult Film Copyright Infringement Cases, 296 F.R.D. 80, 84 (E.D.N.Y. 2012)_("[I]t is no more likely that the subscriber to an IP address carried out . . . the purported illegal downloading . . . than to say an individual who pays the telephone bill made a specific telephone call."); _Malibu Media, LLC v. Doe, No. 15 CIV. 4369(AKH), 2015 WL 4092417 (S.D.N.Y. July 6, 2015)_ (denying motion for expedited discovery where the plaintiff merely pleaded an IP address was associated with downloading).

The Court is aware of authority that limits Cobbler to the motion to dismiss context. In other words, some decisions hold that Cobbler only applies after the plaintiff has an opportunity to obtain discovery to identify **[\*25]** a subscriber. For example, in _Strike 3 Holdings, LLC v. John Doe, No. 19-CV-00723-JCS, 2019 U.S. Dist. LEXIS 113919, 2019 WL 2996428 (N.D.Cal. July 9, 2019)_, the Court ruled that Cobbler, "does not stand for the proposition that subpoenas may not be used to determine a subscriber's name." _2019 U.S. Dist. LEXIS 113919, [WL] at \*3_. However, the Court respectfully disagrees that Cobbler should be given a narrow reading. First, the Ninth Circuit in Cobbler did not specifically address a discovery issue so the Court will not read into the decision a ruling that was not decided. See _Wright v. Spaulding, 939 F.3d 695, 2019 WL 4493487, at \*5 (6th Cir. 2019)_ ("For a court's conclusion about an issue to be part of its holding . . . the court must have actively applied the conclusion to the case in front of it. . . . [and] it must be clear that the court considered the issue and consciously reached a conclusion about it.") (citation omitted). Second, for the reasons already stated, it would be anomalous to permit a plaintiff in a John Doe case to obtain discovery based on a futile boilerplate complaint. Such bootstrapping must be barred in order to protect the integrity of the courts. In this Court's view Cobbler carries just as much weight in the context of a motion for expedited discovery or motion to quash, as it does in the context of a motion to dismiss. This is certainly **[\*26]** not the first and only Opinion denying a motion for expedited discovery because of a deficient pleading. Third, for the reasons already discussed, in the context of

examining the totality of the circumstances to decide if expedited discovery should be granted, it is appropriate to examine in the first instance whether the complaint can withstand a dismissal motion.

A recent instructive decision from this District is *Malibu Media v. Joe Park, No. 17-12107 (JMV)(MF), 2019 U.S. Dist. LEXIS 113434, 2019 WL 2960146 (D.N.J. July 9, 2019)*. In that case, plaintiff filed a copyright infringement complaint against an alleged John Doe infringer. *2019 U.S. Dist. LEXIS 113434, [WL] at \*1*. The complaint was later amended to specifically name the subscriber who then defaulted. Id. In denying plaintiff's unopposed motion for default judgment, the Court recognized that simply naming an IP subscriber does not make out a copyright claim and does not show that the subscriber is liable. *2019 U.S. Dist. LEXIS 113434, [WL] at \*3*. The Court agreed with Cobbler and stated, "[p]laintiff will have to show something more than merely tying Defendant to an IP address in order to sufficiently establish copyright infringement." *2019 U.S. Dist. LEXIS 113434, [WL] at \*6*; see also *In re BitTorrent Adult Film Copyright Infringement Cases, 296 F.R.D. at 84* ("[T]he assumption that the person who pays for internet access at a given location is the same individual who allegedly downloaded **[\*27]** a single sexually explicit film is tenuous, and one that has grown more so over time."; *Patrick Collins, Inc. v. John Doe 1, 288 F.R.D. 233, (E.D.N.Y. 2012)* (collecting cases) (affirming Magistrate Judge's Report and Recommendation that expedited discovery be denied, and agreeing that the discovery of the subscriber's identify would not establish a reasonable likelihood of the identity of the defendant who could be sued).

The Court is not unsympathetic to Strike 3's argument that without the requested discovery it may not be able to identify alleged copyright infringers. After all, who can argue with the notion that Strike 3 has a right to protect its copyrights. However, the fact that the law lags behind technology is not an ill this Court can cure. The Court will not create a remedy for Strike 3 that does not exist under existing law. *Cobbler, 901 F.3d at 1146-47* ("While we recognize this obstacle

to naming the correct defendant, this complication does not change the plaintiff's burden to plead factual allegations that create a reasonable inference that the defendant is the infringer."); *Malibu Media v. Park, No. 17-12107 (JMV)(MF), 2019 U.S. Dist. LEXIS 113434, 2019 WL 2960146, at \*6 (D.N.J. July 9, 2019)* ("The Court recognizes . . . that . . . technology limitations potentially puts a plaintiff in a difficult position in naming the correct defendant, but **[\*28]** . . . such limitations do not relieve a plaintiff of alleging sufficient facts so that a court can reasonably infer that the named defendant is the actual infringer."); *Strike 3 Holdings, LLC v. Doe, 331 F.R.D. 14, 20 (E.D.N.Y. 2019)*(denying request for expedited discovery and stating, "Strike 3's concern about its ability to enforce its copyright against peer-to-peer file sharers is a valid one, but not one that provides good cause to depart from otherwise applicable discovery rules. Also stating, "[t]he fact that Congress has not acted [to address the problem peer-to-peer file sharing technology creates], however, does not mean that courts should take it upon themselves to provide more effective enforcement mechanisms to potential plaintiffs."); *Hard Drive Productions, Inc. v. Does 1-90, No. C11-03825HRL, 2012 U.S. Dist. LEXIS 45509, 2012 WL 1094653, at \*7 (N.D. Cal. Mar. 30, 2012)* (denying expedited discovery despite the court's recognition that plaintiff is aggrieved by the apparent infringement and the court's sympathy toward the copyright holder's argument that lawsuits are the only way for it to find and stop infringers). As was well stated in *Strike 3 Holdings, LLC., 331 F.R.D. at 20*:

> The enforcement problem that peer-to-peer file sharing technology creates for copyright owners is one that Congress could choose to remedy at any time. . . . The fact **[\*29]** that Congress has not acted, however, does not mean that courts should take it upon themselves to provide more effective enforcement mechanisms to potential plaintiffs . . . .[The Court] conclude[s] that Strike 3's concern about its ability to enforce its copyright against peer-to-peer sharers is a valid one, but not one that provides good cause to depart from otherwise applicable discovery rules.

Further, as was stated in *Strike 3 Holdings, LLC, 351 F. Supp. 3d at 165*, "[m]aybe someday someone will show the Court a method to identify infringers with sufficiently less risk of false accusations. But because Strike 3 fails to do so here, it cannot subpoena defendant's ISP."

## 4. Besides the Futility of its Complaints, Other Reasons Exist to Deny Strike 3's Motions for Expedited Discovery

Even if the Court ruled that Strike 3's complaints would survive a *Rule 12(b)(6)* motion, it would still deny Strike 3's requests for expedited discovery. No single factor accounts for the Court's finding that Strike 3's requests are unreasonable. Instead, the ruling is based on the totality of the circumstances which includes the following: (1) Strike 3 bases its complaints on unequivocal affirmative representations of alleged facts that it does not know to **[*30]** be true; (2) Strike 3's subpoenas are misleading and present too great of an opportunity for misidentification; (3) Strike 3's linchpin argument that there is no other way to stop infringement of its works other than to sue individual subscribers, is wrong; (4) Strike 3 does not exhaust reasonably available means to stop infringement besides filing individual lawsuits; (5) Strike 3's lawsuits do not appear to be especially effective in preventing and deterring infringement; and (6) Strike 3 unduly minimizes IP subscribers' privacy interests. The Court also recognizes that a subscriber will be materially prejudiced if it is wrongfully named in a lawsuit. Therefore, considering the overall administration of justice against the potential prejudice to a subscriber, the balancing of the interests falls in favor of denying Strike 3's requests for expedited discovery. This is true even though the Court's ruling may make it more difficult for Strike 3 to cease infringement of its copyrights.

## A. Strike 3 Bases its Complaints on Unequivocal Affirmative Representations of Alleged Facts that it Does Not Know to be True

Even if Strike 3's complaints pass muster under *Rule 12(b) (6)*, Strike 3 pleads unequivocal **[*31]** statements of alleged facts that it does not know to be true. Strike 3 unequivocally avers that the John

Doe IP subscriber "downloaded, copied, and distributed" its copyrighted works. Compl. ¶ 27. Yet, however, Strike 3 acknowledges it is equally as likely the subscriber or someone in the household is to blame for the infringement. TR2 21:21-22. Strike 3 also acknowledges that despite its unequivocal averments it does not know for certain where the subscriber lives. The fact that Strike 3 has to resort to making unequivocal statements of alleged facts that it does not know to be true in order to obtain expedited discovery, is troublesome and is a relevant fact the Court considers when it decides whether to grant Strike 3's discovery requests.

It appears to the Court that Strike 3 sacrifices the accuracy of its pleadings so that it can bootstrap expedited discovery. In other words, Strike 3 sacrifices accuracy for expediency. This was effectively acknowledged by Strike 3's counsel who stated: "[w]e do say it's the subscriber [as the named defendant] because that's what we're going to need the subpoena to help us get the further investigation." TR1 24:18-20. Strike 3's counsel also stated: **[*32]** "I think we're saying in our initial Complaint that the subscriber is going to get us to that infringer." TR1 24:9-10. Strike 3 acknowledges its complaints are filed for the "sole purpose" of enabling it to seek leave to conduct expedited discovery[.]" LB at 3 (July 15, 2019). This Court is not the only Court troubled by Strike 3's pleadings. In *Strike 3 Holdings, LLC, 331 F.R.D. at 19*, the Court denied Strike 3's request for expedited discovery and wrote:

> It is thus apparent that Strike 3 is deliberately asserting claims in a scattershot fashion against a broad array of individuals simply because it is confident that many of them will be liable — even if almost as many of them are not. Such a pleading seems wholly inconsistent with the requirement that a plaintiff may not file a complaint for an improper purpose . . . .[T]he certainty that such an approach will impose needless burdens on innocent individuals counsels against a finding of good cause to permit expedited discovery.

The Court agrees.

## B. Strike 3's Subpoenas are Misleading and Create

## too Great of an Opportunity for Misidentification

Apart from the questionable averments in Strike 3's complaints, the Court has come to learn that Strike 3's subpoenas are misleading. Prior to its **[*33]** recent inquiries, the Court assumed Strike 3's subpoenas identified the name of the IP subscriber when its works were infringed. However, the Court was wrong.

Strike 3's subpoenas only seek to identify the infringer to one of its works. There is no "particular rhyme or reason" to the one listed infringement date listed in Strike 3's subpoenas except Strike 3 always "choose[s] the first one that's been expedited with the copyright office, has a registration, and is within the ISP's data retention." (alteration in original) TR2 58:22-25 to 59:1-2. The problem with Strike 3's subpoenas is that Strike 3 does not reveal that the subscriber identified by its subpoenas may not be the subscriber when its work was infringed. For example, as to the exemplar complaint Strike 3 alleges 31 works were infringed from December 3, 2017 to August 16, 2018. Strike 3's November 13, 2018 subpoena [Doc. No. 7-1] only asks for the name of the IP subscriber on July 27, 2018. In its motions Strike 3 does not mention that due to dynamic IP addresses the name of the subscriber identified by Strike 3's November 13, 2018 subpoena may not be the person who subscribed to the same address on July 27, 2018. This information **[*34]** is not revealed by Strike 3 even though Strike 3 recognizes there are a limited number of IP addresses, the addresses are dynamic, and they therefore change. Strike 3 knows that at different times different people can have the same IP address. TR2 28:6-14. This fact is recognized by numerous courts. See _Call of the Wild Movie, LLC v. Does 1-1,062, 770 F. Supp.2d 332, 356 (D.D.C. 2011)_ ("[F]or dynamic IP addresses, a single IP address may be reassigned to many different computers in a short period of time."). Significantly, in _United States v. Vosburgh, 602 F. 3d 512, 523 (3d Cir. 2010)_, the Court cited the testimony of a Comcast witness who testified that the lease period for each IP address is approximately 6-8 days and that after the expiration of the lease, the assignment of an IP address to a particular computer may or may not be renewed. In _Strike 3 Holdings, LLC, 2019 U.S. Dist. LEXIS 116002, 2019 WL 3069760, at *1 n.1_, the Court noted:

> An IP address is not really an "address" or physical "place" in the usual sense of the words, and therefore the term can be quite misleading. In fact, it is only an electronic "route" to the Internet assigned by a Provider to a customer on a given date and hour to provide access to the internet. The route can be assigned to different customers on given dates or given [hours]. If a customer accesses the Internet **[*35]** briefly and signs off, the IP address is assigned to another customer.

Courts routinely recognize the dynamic nature of IP addresses and how often they change. The fact that IP addresses change so frequently creates a significant opportunity for misidentification. _Reid, 194 N.J. at 390-91_. ("Most often when an individual connects to the Internet, his or her Internet Service Provider dynamically assigns an IP address to the computer, which can change every time the user accesses the Internet. In other words, the 'dynamic' IP address assigned to the computer can be different for each internet session."); _Call of the Wild Movie, LLC, 770 F. Supp.2d at 356-57_ ("Most consumer IP addresses are dynamic as opposed to 'static' . . . . Dynamic IP addresses are randomly assigned to internet users, and change frequently. Consequently, for dynamic IP addresses, a single IP address may be reassigned to many different computers in a short period of time. Associating a dynamic IP address with a particular customer at a given moment makes the task of 'discovering the identity of a particular infringer more difficult.'"); _Klimas v. Comcast Cable Communications, Inc., No. 02-CV-72054-DT, 2003 U.S. Dist. LEXIS 27765, 2003 WL 23472182, at *5 (E.D. Mich. July 1, 2003)_, aff'd sub nom. _465 F.3d 271 (6th Cir. 2006)_("Dynamic IP addresses constantly change"); _Criminal Productions, Inc. v. Doe [*36] , Case No. 16-cv-2352 WQH (JLB), 2016 U.S. Dist. LEXIS 154381, 2016 WL 6581850, at *2 (S.D. Cal. Nov. 7, 2016)_ (citation and quotation omitted) ("In the context of dynamic IP addresses, a person using [a particular IP] address one month may not have been the same person using it the next."); _Strike 3_

*Holdings, LLC v. Doe, Case No. 19-cv-00723-JCS, 2019 U.S. Dist. LEXIS 113919, 2019 WL 2996428, at \*2 (N.D. Cal. July 9, 2019)*(recognizing "the inherent imprecision of an IP address as a means to identify the individual who purportedly infringed *Strike 3*'s copyrights").

Given the dynamic nature of IP addresses, the Court cannot be sure that the subscriber's name revealed by *Strike 3*'s subpoenas is the name of the subscriber on the infringement date. *Klimas, 2003 U.S. Dist. LEXIS 27765, 2003 WL 23472182, at \*5* ("Dynamic IP addresses constantly change and unless an IP address is correlated to some other information . . . it does not identify any single subscriber by itself."). *Strike 3* could conduct a more diligent search if it asked for the subscriber's name on the date all 31 of its works were downloaded (or a representative number) instead of just a single date. However, *Strike 3* does not do this because of cost. TR1 96:13-25 to 97:1-5. Further, even if the names of the IP subscribers for all 31 works are identified, the names are not necessarily the subscribers on the dates of the infringing activity. In the past, when **[\*37]** the Court granted *Strike 3*'s discovery motions, it incorrectly assumed the name of the subscriber identified by *Strike 3*'s subpoenas was the same subscriber on the date of the alleged infringement. The Court also incorrectly assumed the listed IP address was permanent and only belonged to one person. The Court now knows this is not necessarily the case. It is implausible that *Strike 3* is not aware of the substantial body of case law discussing the problems with dynamic IP addresses.

It is also not insignificant an ISP may not possess the subscriber's name. According to *Strike 3*, it is questionable whether subscribers retain data for more than three (3) months. TR2 18:4-12; 23:7-25 to 24:1-4; see also Mem. of Law in Supp. of Pl.'s Mot. at 2, Doc. No. 4-1 ("John Doe Defendant's ISP only maintains the internal logs of the requested information for a brief period of time."). Given that *Strike 3* almost always identifies infringing activity that occurs earlier than three (3) months before its subpoena, subscriber defendants are at a distinct disadvantage because the ISP may not have the records to show who subscribed to the listed IP address on all the dates of the alleged infringing activity. **[\*38]** The problems associates with IP addresses was discussed in a recent law review article:

> IP addresses are not people. Indeed, IP addresses are often used by multiple people in ways that make it very difficult to be sure who is responsible for what activity. Routers are left unsecured or with factory defaults; passwords are shared with family members, roommates, guests and neighbors; unsecured guest accounts are created and then forgotten; passwords are cracked; passwords are reused across different contexts (and once a password is guessed or compromised in one context it is worthless in all of them); and backdoors are opened up by malware and unsecure devices, including printers and even refrigerators.

> In addition, there are a variety of ways that a hacker can hide their own IP address by using someone else's. Regardless of whether IP addresses can be tracked reliably in other contexts, they may be particularly unreliable in the BitTorrent context, because the BitTorrent protocol was designed to allow high-bandwidth connections and thus "does not perform ... source IP address validation." In practice, this means that the header information (think of the envelope on a letter in the postal **[\*39]** system) transmitted by a swarm participant can display someone else's IP address. This problem is compounded by the fact that many sites coordinating BitTorrent swarms "inject random IP addresses into their swarm list results."

See Matthew Sag and Jake Haskell, Defense Against the Dark Arts of Copyright Trolling, *103 Iowa L. Rev. 571, 590-91 (2018)*.

## C. *Strike 3* Has Other Available Means to Stop Infringement Besides Suing Individual Subscribers in John Doe Complaints

*Strike 3*'s linchpin argument for why expedited discovery should be granted is that, otherwise, it is powerless to prevent infringement of its works. See Mot. at 11 ("[I]dentifying and serving the alleged

infringers is the only method through which Plaintiff can protect its copyright interests.") (citation and quotation omitted). Strike 3 further argues that if its request for expedited discovery is denied, it "would be to declare that copyright infringement is de facto legal, provided it is done through BitTorrent, because the courts are powerless to stop it." LB at 10 (June 11, 2019). The Court rejects Strike 3's argument which provides another reason why Strike 3 has not established good cause to obtain expedited discovery. There are other available means for Strike 3 to prevent **[*40]** infringement of its works that Strike 3 has chosen not to pursue. It is unreasonable to grant Strike 3 expedited discovery when Strike 3 chooses not to avail itself of legal remedies that do not involve filing thousands of complaints that impinge on the constitutionally protected privacy rights of New Jersey subscribers to ISP's.

Passed in 1998, the _Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(a)_, provides a series of "safe harbors" to ISP's that limit their liability for copyright infringement. However, in order to fall within the safe harbor, the ISP must show that it has "adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers . . . who are repeat infringers." _17 U.S.C. §512 (i)(1)(A)_. _UMG Recordings, Inc. v. Grande Communications Networks, LLC, 384 F.Supp.3d 743, 755 (W.D. Tx. 2019)_ ("[T]o be eligible for the DMCA safe harbor, an ISP must 'reasonably implement' a termination policy, not just adopt one."). To assess whether an ISP has reasonably implemented a repeat infringer termination policy, the relevant question to ask is whether the ISP actually terminates the uploading privileges of repeat offenders under appropriate circumstances. Id.

The DMCA affords copyright owners such as Strike 3 a process to notify ISP's of the infringement **[*41]** of their works. The ISP's are then required to act on valid notifications and to terminate, in appropriate circumstances, subscribers and account holders who are repeat

offenders.[16] Courts have not defined a specific number of strikes against a user that require an ISP to suspend or terminate that user's access to the internet. _Rosen v. eBay, Inc., No. CV 16-9183-MWF(Ex), 2018 U.S. Dist. LEXIS 223720, 2018 WL 4808513, at *6 (C.D. Cal. Apr. 4, 2018)_. Comcast, for example, has a multi-step policy and reserves the right to suspend or terminate service to a repeat infringer who receives multiple DMCA notices. See Comcast's DMCA Repeat Infringer Policy for Xfinity Internet Service, supra note 16. Specifically, Comcast's serial infringer policy provides as follows:

> Triggering steps under this policy may result in the following: a persistent in-browser notification or other form of communication that requires you to log in to your account or call us; a temporary suspension of, or other interim measures applied to, your service; the termination of your Xfinity internet service as well as your other Xfinity services[.]

Id.

One would think that Strike 3 would be eager to notify ISP's that its subscribers are infringing their copyrights, so that an infringer's internet service would be interrupted, **[*42]** suspended or terminated and infringement would stop. However, Strike 3 does not take this simple step but instead files thousands of lawsuits arguing that it has no other recourse to stop infringement. Strike 3 admits that, with regard to the exemplar subscriber and its other John Doe defendants, it did not send ISP's take down notices. TR1 113:15-18; TR2 45:4-8. Inexplicably, Strike 3 does not send take down notices concerning the individual subscribers it sues, but yet it sends these notices to torrent websites, Google, and infringing websites like The Pirate Bay. TR1 110:12-25. As discussed, although Strike 3 has the right to notify ISP's of infringing activity, and ISP's can disable the infringer's internet access, Strike 3 does not send take down

---

[16] The Repeater Infringer Policy of each ISP can be found on the internet. See Comcast's DMCA Repeat Infringer Policy for Xfinity Internet Service, https://www.xfinity.com/support/articles/comcast-dmca-compliance-policy (last visited Oct. 24, 2019) (providing information about Comcast's Repeat Infringer Policy).

notices regarding the John Does that it sues. In support of its discovery motions it is unreasonable for Strike 3 to argue that it has no alternative to filing John Doe complaints, while not using the protections afforded to it under the DMCA. The Court recognizes there is no exhaustion requirement that requires Strike 3 to send take down notices before it files its copyright cases. However, it is not reasonable for Strike 3 to argue [*43] it has no recourse but to seek expedited discovery when it ignores the DMCA.

Strike 3's arguments for why it does not send take down notices concerning its John Does defendants are not persuasive. It is not plausible that Strike 3 cannot find an outside service to send out its notices. Even if true, Strike 3 can serve its own take down notices. Further, the Court does not accept Strike 3's argument that take down notices are fruitless.

A recent case that debunks Strike 3's futility argument is *BMG Rights Mgmt. (US) LLC v. Cox Commc'n., Inc., 881 F.3d 293 (4th Cir. 2018)*. In that case BMG sued Cox, an ISP. *Id. at 298*. BMG owns copyrights to musical compositions and sued to hold Cox contributorily liable for the infringement of BMG's copyrights by Cox's customers. Id. As part of its defense, Cox argued it was immunized from liability because of the safe harbor provision in the DMCA. *Id. at 300-01*. However, the Court ruled that Cox could not assert a "safe harbor" defense because it did not reasonably implement its repeat infringer policy. *Id. at 303*. Thus, if an ISP such as Comcast willfully ignores Strike 3's DMCA notices and/or does not follow its repeat infringer policy, Strike 3 has the option of bringing an action against the ISP.[17] In the event ISP's are not taking Strike 3's notices seriously, [*44] the possibility of lawsuits akin to BMG's complaint may spur ISP's to more faithfully comply with their repeat infringer policies and suspend or bar internet service to repeat infringers. One would expect this to create a substantial incentive for persons to stop the infringement of Strike 3's works.

D. The Deterrent Effect of Strike 3's Lawsuits is Questionable

While the Court recognizes Strike 3 has the right to protect its copyrights, it is not clear, as Strike 3 argues, that its complaints are effective in preventing and deterring infringement. Strike 3 might engender more sympathy if its lawsuits effectively deterred infringers. This does not appear to be the case. Despite filing thousands of copyright complaints, Strike 3 recognizes infringement of its works has increased. (Albeit, Strike 3 attributes this to the increased popularity of its sites). In addition, Strike 3 estimates that between 200,000 to 400,000 people illegally download its videos every month. TR1 126:16-22; TR2 84:8-12. Also, the Court recently learned that Strike 3 only targets the limited universe of residential subscribers of reputable ISP's. TR2 37:7-19; 83:15-19. As a result, "granting [Strike 3] leave [*45] to issue subpoenas . . . will do little if anything to deter future copyright violations. [Consequently], Strike 3's interest in enforcing its rights does not constitute good cause to allow premature subpoenas." *Strike 3 Holdings, LLC, 331 F.R.D. at 19*.

E. Prejudice to Subscribers

Thus far, the Court's balancing has not focused on the interests of the innocent "John Doe" or subscriber defendant. However, the substantial prejudice that may inure to a subscriber from the release of its private information and the possible false identification in a lawsuit is significant. The innocent subscriber may have to pay a substantial sum to retain a lawyer to defend the lawsuit, or possibly settle to avoid incurring future costs. The innocent subscriber may also be subject to unduly intrusive discovery such as searches of his/her computer and social media. In addition, negative publicity and embarrassment may occur from being named in a copyright infringement lawsuit. Also, the fact that the innocent subscriber was named in a lawsuit may be revealed in an unrelated employment or credit search.

---

[17] The Court is not encouraging Strike 3 to file these lawsuits. The Court simply cites to BMG to debunk Strike 3's argument that there are no alternatives to stopping a subscriber from infringing other than to file John Doe complaints seeking expedited discovery.

Importantly, Strike 3 unduly minimizes the subscriber's substantial interest in the privacy of his/her subscription information. See Mot. **[\*46]** at 12 ("John Doe Defendant's privacy interest is minimal[.]" Although there may not be a _Fourth Amendment_ expectation of privacy in internet subscriber information, "_Article 1, Paragraph 7 of the New Jersey Constitution_ protects an individual's privacy interest in the subscriber information . . . provide[d] to an internet service provider." _Reid, 194 N.J. at 399_; see also _In re Nickelodeon Consumer Privacy Litigation, MDL No. 2443 (SRC), 2014 U.S. Dist. LEXIS 91286, 2014 WL 3012873, at \*18 (D.N.J. July 2, 2014)_ ("[T]he right to privacy created by the New Jersey Constitution provides greater protection than the privacy right created by the federal Constitution.") (citation omitted). The Court is not ruling that subscriber information may never be disclosed in response to a subpoena. However, given the expansive view of individual privacy under New Jersey law, there should be a good reason before subscriber information is turned over. This is especially true in a situation where questionable averments are relied upon to obtain discovery.

## F. Rebuttal of Strike 3's Arguments

No good reason exists to grant Strike 3's requests for expedited discovery since its complaints do not plead a cognizable claim. Even if the complaints pass muster, the danger of a false identification and the prejudice it may cause outweighs Strike 3's interest in obtaining expedited discovery. Relevant to this balancing is the fact that Strike **[\*47]** 3's lawsuits may not effectively deter infringement, and other reasonably available and less intrusive legal recourse is available to Strike 3 to prevent infringement.

Strike 3 argues the Court should trust it to only name defendants against whom it has a "rock-solid" case. The Court agrees with the following statement made in a recent decision rejecting Strike 3's argument:

> I have no reason to question the sincerity of Strike 3's stated commitment to ethical conduct. But as a practical matter, its assertion in that regard is no more than a promise that a

Court must hope it will fulfill because it has no realistic prospect of meaningful judicial oversight...I conclude that Strike 3's promises, and its history of avoiding judicial oversight after securing leave to serve subpoenas, do not satisfy the good cause standard.

_Strike 3 Holdings, LLC, 331 F.R.D. at 18._

None of Strike 3's arguments for why good cause exists to grant expedited discovery carry the day. Strike 3 argues it has pleaded a prima facie claim for direct copyright infringement against the John Doe IP subscriber. The Court disagrees for the reasons discussed. Even if Strike 3 passes this initial threshold, the Court has shown that Strike 3's averments are **[\*48]** conclusory. Also, that Strike 3 relies upon unequivocal affirmative representations of alleged facts that it does not know to be true. Strike 3 argues that since its discovery requests are narrowly tailored, they should be granted. However, due to the prevalence of dynamic IP addresses, Strike 3's narrow discovery requests create a greater likelihood of misidentification than broader requests. Strike 3 argues there is no alternative means to discover the identity of subscribers. While this may be true, Strike 3 acknowledges it does not know if the subscriber infringed its works. Although Strike 3's subpoenas request relevant information, this is not the touchstone for expedited discovery. Strike 3 argues the subscriber's identity is necessary to advance its infringement claim. Strike 3 ignores the fact that the law does not provide a remedy for every wrong. Last, Strike 3 argues the subscriber will not be prejudiced by its subpoenas. To the contrary, the subpoenas infringe the subscriber's privacy interests and result in substantial prejudice to a misidentified alleged infringer.

## Conclusion

In conclusion, the Court finds that good cause does not exist to grant Strike 3's motions for **[\*49]** expedited discovery. Based on the extensive record, it is unreasonable to grant Strike 3's motions. The Court agrees with Judge Lamberth's ultimate ruling but relies upon a different emphasis.

Granting expedited discovery is the exception rather than the rule, and a good reason must exist to grant the discovery. Especially in the John Doe or ex parte discovery context, it is appropriate to closely scrutinize whether a pleading is futile or passes muster. Expedited discovery is not justified when Strike 3 bootstraps its discovery requests onto a deficient pleading that would not survive a *Rule 12(b)(6)* motion.

Even if Strike 3's complaints would survive a *Rule 12(b)(6)* motion, the requested discovery would still be denied. The minimal subscriber information Strike 3 requests in its subpoenas is misleading and does not account for the prevalence of dynamic IP addresses. Consequently, Strike 3's discovery creates too great of an opportunity for misidentification. Further, the linchpin of Strike 3's argument for good cause, that there is no alternative option to prevent the infringement of its works other than to identify a subscriber via an expedited subpoena to an ISP, is wrong. Other means are reasonably available **[*50]** to Strike 3 besides filing thousands of individual John Doe lawsuits. When the foregoing is weighed against the prejudice that may result to an innocent subscriber defendant, including the invasion of a constitutionally protected privacy interest recognized by the New Jersey Supreme Court, the balance falls in favor of denying Strike 3's discovery motions.

The Court is not unmindful that its ruling may make it more difficult for Strike 3 to identify copyright infringers. To the extent this is the price to pay to assure compliance with the applicable law, so be it. A legal remedy does not exist for every wrong, and it is unfortunately the case that sometimes the law has not yet caught up with advanced technology. This is not the first time, nor will it be the last, where a party who believes it was wronged was denied discovery.

Accordingly, for the foregoing reasons, and to the extent it has not already been done, it will be Ordered that Strike 3's motions for expedited discovery are DENIED. To the extent these motions have been previously granted, and the defendant has not yet been served, the Orders will be vacated. The Court will not interfere with cases where Strike 3 has identified **[*51]** a defendant other than through an expedited discovery subpoena issued with leave of Court.

/s/ Joel Schneider

JOEL SCHNEIDER

United States Magistrate Judge

DATED: October 24, 2019

## ORDER

On September 24, 2019, the Court entered Orders denying plaintiff's Motions for Discovery and Motions for an Extension of Time in Which to Effectuate Service of Process. Concurrently with the entry of the present Order, the Court entered its Opinion setting forth the basis for its ruling denying plaintiff's motions. In accordance with the Court's prior Orders, and so as not to prejudice plaintiff,

IT IS HEREBY ORDERED this 24th day of October, 2019, that the time to appeal the Court's Orders denying plaintiff's Motions for Discovery and Motions for an Extension of Time in Which to Effectuate Service of Process shall commence the date the Court's Opinion and this Order is entered and served on plaintiff via ECF. The time to appeal is set forth in the applicable Federal and Local Rules of Civil Procedure.

/s/ Joel Schneider

JOEL SCHNEIDER

United States Magistrate Judge

End of Document

# EXHIBIT C

Caution
As of: November 12, 2019 11:39 PM Z

# *Strike 3 Holdings, LLC v. Doe*

United States District Court for the Eastern District of New York

March 21, 2019, Decided; March 21, 2019, Filed

18-CV-0449 (ENV) (JO); 18-CV-1155 (KAM) (JO); 18-CV-1159 (KAM) (JO); 18-CV-1184 (JBW) (JO); 18-CV-1196 (JBW) (JO); 18-CV-2073 (ILG) (JO); 18-CV-2132 (AMD) (JO); 18-CV-3216 (KAM) (JO); 18-CV-3778 (ENV) (JO); 18-CV-3785 (WFK) (JO); 18-CV-6988 (NGG) (JO); 19-CV-0725 (NGG) (JO); 19-CV-0729 (AMD) (JO)

**Reporter**

331 F.R.D. 14 *; 2019 U.S. Dist. LEXIS 69632 **; 103 Fed. R. Serv. 3d (Callaghan) 1057; 2019 WL 2022452

STRIKE 3 HOLDINGS, LLC, Plaintiff, - against - JOHN DOE, Defendant.

**Counsel: [**1]** For Strike 3 Holdings, Llc (1:18cv449, 1:18-cv-01155-KAM-JO, 1:18-cv-01159-KAM-JO, 1:18-cv-01184-ARR-JO, 1:18-cv-01196-CBA-JO, 1:18-cv-02073-ILG-JO, 1:18-cv-02132-AMD-JO), Plaintiff: Lincoln Bandlow, FOX ROTHSCHILD LLP, Los Angeles, CA USA; Shireen Nasir, Fox Rothschild LLP, New York, NY USA.

For Strike 3 Holdings, LLC, (1:19-cv-00725-KAM-JO, 1:19-cv-00725-KAM-JO, 1:18-cv-03216-KAM-JO, 1:18-cv-03778-ENV-JO, 1:18-cv-03785-WFK-JO, 1:18-cv-06988-NGG-JO), Plaintiff: Shireen Nasir, Fox Rothschild LLP, New York, NY.

**Judges:** James Orenstein, United States Magistrate Judge.

**Opinion by:** James Orenstein

# Opinion

### [*15] MEMORANDUM AND ORDER

James Orenstein, Magistrate Judge:

In each of the captioned cases, as in hundreds of others just like it in this district, plaintiff Strike 3 Holdings, LLC ("Strike 3") has filed a Complaint accusing a "John Doe" defendant, identified only by an Internet Protocol ("IP") address, of copyright infringement. *See* Docket Entry ("DE") 11 (Amended Complaint).[1] In each case, Strike 3 **[*16]** seeks leave *ex parte* to engage in expedited discovery. Specifically, it asks to serve a subpoena on the Internet Service Provider (the "Provider") associated with the pertinent IP address, thus requiring the Provider to identify **[**2]** the subscriber of internet services at the address. For the reasons set forth below, I deny the request in each case.

### I. Background

Strike 3 owns the copyright to various adult motion pictures distributed through websites and DVDs. *See* Amended Complaint ¶¶ 2-3; *see also In re Various Strike 3 Holdings, LLC Copyright Infringement Cases, 2018 U.S. Dist. LEXIS 115832, 2018 WL 3404142, at *2 (E.D.N.Y. July 11, 2018); In re Strike 3 Holdings, LLC, 2018 U.S. Dist. LEXIS 59961, 2018 WL 1710172, at *1 (E.D.N.Y. Apr. 9, 2018)*. It alleges that defendant Doe violated two provisions of the Copyright Act by using BitTorrent (an internet-based peer-to-peer file sharing technology ) to download its motion pictures and distribute them to others. Am. Complaint ¶¶ 4, 20, 42-47; *17 U.S.C. §§ 106, 501*. Strike 3 does not know Doe's identity; it knows only the IP address used for the allegedly infringing

---

[1] All record citations in this document refer to filings in docket number 18-CV-2132 (AMD) (JO), in which Strike 3 filed a memorandum not yet filed in other cases. In all other respects, the record in each of the remaining captioned cases, including the operative pleading's allegations, is substantially similar.

Page 2 of 6

331 F.R.D. 14, *16; 2019 U.S. Dist. LEXIS 69632, **2

download. It therefore seeks to subpoena the Provider as the only source of information able to identify the subscriber of that internet service. *See* DE 12 (motion); DE 12-1 (supporting memorandum) ("Memo.") at 1; *Fed. R. Civ. P. 45*.

Of course, Doe — the person who engaged in the allegedly infringing conduct in each case — might or might not be the same person as the subscriber of internet service associated with the IP address Strike 3 has identified. The assumption that the two are the same "is tenuous, and ... has grown more so over time.... [I]t is [**3] no more likely that the subscriber to an IP address carried out ... the purported illegal downloading ... than to say an individual who pays the telephone bill made a specific telephone call." *In re BitTorrent Adult Film Copyright Infringement Cases, 296 F.R.D. 80, 84 (E.D.N.Y. 2012)* (report and recommendation), *adopted sub nom. Patrick Collins, Inc. v. Doe 1, 288 F.R.D. 233 (E.D.N.Y. 2012)*. Accordingly, I asked Strike 3 to describe how it uses the kind of information it seeks here to accurately identify an individual as the alleged infringer of its copyright. *See* Order dated December 13, 2018. Strike 3 responded on December 21, 2018. *See* DE 16 (Letter). At a conference on March 12, 2019, I expressed certain remaining concerns about Strike 3's motions and asked for additional information about the extent to which it has used similar information obtained through early discovery other cases to prosecute its claims. *See* DE 20 (minute entry). Strike 3 filed a further memorandum on March 19, 2019. *See* DE 21 ("Supp. Memo.").

## II. Discussion

Absent a court order, a litigant in federal civil case "may not seek discovery from any source before the parties have conferred[.]" *Fed. R. Civ. P. 26(d)(1)*. The decision to grant or deny expedited discovery, like other aspects of discovery management, is committed to the court's discretion. *See, e.g., Ceglia v. Zuckerberg, 600 F. App'x 34, 37 n.4 (2d Cir. 2015)* (citing *Goetz v. Crosson, 41 F.3d 800, 805 (2d Cir. 1994))*; *Raza v. City of New York, 998 F. Supp. 2d 70, 75 (E.D.N.Y. 2013)* (citing cases). [**4] Although courts have applied a "flexible standard of reasonableness and good cause" to requests for expedited discovery,

they apply "particularly careful scrutiny" when plaintiffs make such requests *ex parte*. *Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 241 (S.D.N.Y. 2012)* (quoting *Ayyash v. Bank Al-Madina, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005))*.

If the court grants leave to conduct expedited discovery on a showing of good cause, or if the parties have had their initial discovery planning conference and are therefore permitted under *Rule 26* to seek discovery, a party may then serve a subpoena requiring a non-party to disclose records or provide testimony. *See Fed. R. Civ. P. 45*. In doing so, the party serving the subpoena has an obligation to "take reasonable steps to avoid imposing undue burden or expense" on the recipient and "[t]he court for the district [*17] where compliance is required must enforce this duty[.]" *Fed. R. Civ. P. 45(d)(1)*. A person upon whom a subpoena imposes undue burdens may seek to quash or modify it. *Fed. R. Civ. P. 45(d)(3)(A)(iv)*.

Strike 3 would have me apply the so-called "*Arista* factors" exclusively in analyzing its motion. *See* Memo. at 4-13; *Arista Records, LLC v. Doe 3, 604 F.3d. 110, 118-19 (2d Cir. 2010)* ("*Arista*"). In *Arista*, the court affirmed the denial of an anonymous defendant's *Rule 45* motion to quash a recording company's subpoena to a Provider seeking the identity of subscribers whose accounts had been used [**5] to download and distribute allegedly infringing music. *Id. at 113*. Weighing the defendant's asserted *First Amendment* right to anonymity against the plaintiff's interest in vindicating its copyright claim, the court identified five "principal" factors to consider:

(1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, ... (2) [the] specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information, ... (4) [the] need for the subpoenaed information to advance the claim, ... and (5) the [objecting] party's expectation of privacy.

*Id. at 119* (quoting *Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y.*

Page 3 of 6

331 F.R.D. 14, *17; 2019 U.S. Dist. LEXIS 69632, **5

_2004))._

While the _Arista_ factors are relevant, their utility is limited for two reasons. First, _Arista_ itself acknowledged that the factors it quoted from an earlier decision were the "principal" ones, but not the only ones a court should consider in resolving a _Rule 45_ motion to quash. _Id._ Second, and more fundamentally, the procedural posture of _Arista_ differs from that of these cases in an important respect: in _Arista_, the court considered only whether a subpoena that the plaintiff had already properly issued under _Rule 26_ (after securing judicial leave to conduct expedited **[\*\*6]** discovery) should be quashed as unduly burdensome under _Rule 45_. In making that decision, the circuit court had no occasion to review the propriety of the decision that the plaintiff had made the threshold showing of good cause to engage in expedited discovery; it considered only whether the plaintiff, in issuing the subpoena, had adhered to the standards of _Rule 45_. The two inquiries are qualitatively different. If my friend borrows my car, the standard I will apply in deciding whether to impose conditions on its use (_i.e._, is it unduly burdensome to make him pay for gas, to forbid passengers, or to require that he stop at a particular location?) will be wholly different from my analysis in deciding whether to let him get behind the wheel in the first place (_i.e._, is there good cause to believe he genuinely needs the car and can be trusted to drive it safely and return it promptly?).

Strike 3 now acknowledges that _Arista_ did not involve a motion for expedited discovery, but nonetheless insists that _Arista_ is binding precedent because other district courts have applied the _Arista_ factors in granting similar motions for expedited discovery. As Strike 3 observes, the _Arista_ factors have "solidified **[\*\*7]** into the good cause standard" and are "now routinely used in evaluating parties' request for early discovery." Supp. Memo. at 2. But routine usage is not law. Strike 3 does not cite — and I cannot find — any Second Circuit decision that relied on the _Arista_ factors to resolve a _Rule 26_ motion for expedited discovery, as opposed to a _Rule 45_ motion to quash on _First Amendment_ grounds. Thus, while

_Arista_ is a useful part of the analysis, it is not controlling law on the motions before me. _See Sergeants Benevolent Ass'n Health & Wealfare Fund v. Sanofi-Aventis U.S. LLP, 2011 U.S. Dist. LEXIS 36454, 2011 WL 1326365, at \*4 (E.D.N.Y. Mar. 30, 2011)_ ("district courts are bound to ... to follow controlling precedents of the courts of appeals for their circuits") (citing _Jenkins v. United States, 386 F.3d 415, 418 (2d Cir. 2004)_ (other internal quotations omitted)). The question is whether there is good cause to exercise my discretion to grant an _ex parte_ motion for expedited discovery. The _Arista_ factors inform that analysis but do not end it. Rather, in regulating not only the scope of discovery but also its timing, I must consider "the entirety of the record to date and the _reasonableness_ of the request in light of all the surrounding circumstances." **[\*18]** _Ayyash, 233 F.R.D. at 327_ (internal citations omitted) (emphasis in original).

Strike 3 contends that it needs expedited discovery to identify Doe, investigate Doe's role in the alleged infringement, and serve process **[\*\*8]** on Doe. _See_ Memo. at 1-2. It argues that without the relief it seeks, it cannot protect its copyrights. _Id._ at 4. Its stated goal is "to deter piracy and redirect the infringement back into legitimate sales[.]" _Id._ Moreover, to assuage any concern that it is being overly litigious, Strike 3 assures the court that it files only "the bare minimum number of lawsuits to achieve even a modicum of a deterrent effect." Supp. Br. at 19.

I conclude that these stated justifications do not establish good cause for expedited discovery for several reasons. First, allowing expedited discovery in these circumstances creates a risk that Strike 3 will be in a position to effectively coerce the identified subscribers into paying thousands of dollars to settle claims that may or may not have merit, so as to avoid either the cost of litigation or the embarrassment of being sued for using unlawful means to view adult material. _See, e.g., Strike 3 Holdings, LLC v. Doe, 2019 U.S. Dist. LEXIS 587, 2019 WL 78987, at \*4 (S.D.N.Y. Jan. 2, 2019)_ ("copyright holders such as Plaintiff are repeat litigants who have, in the past, engaged in ... coercive settlement practices") (citing cases).

Page 4 of 6

331 F.R.D. 14, *18; 2019 U.S. Dist. LEXIS 69632, **8

Strike 3 argues that this concern can be managed: in part because it is willing to accept procedural safeguards that will limit the way the subpoenaed [**9] information can be used, and in part because it imposes on itself certain guidelines for selecting cases to prosecute once it receives the subpoenaed information. See Letter at 2-3; Supp. Memo. at 7-10. Other courts have accepted such argument as grounds for granting expedited discovery. See, e.g., Strike 3 Holdings, LLC, 2019 U.S. Dist. LEXIS 587, 2019 WL 78987, at *3 (citing cases).

I have no reason to question the sincerity of Strike 3's stated commitment to ethical conduct. But as a practical matter, its assertion in that regard is no more than a promise that a court must hope it will fulfill because it has no realistic prospect of meaningful judicial oversight. As Strike 3 acknowledges, once it secures leave to engage in expedited discovery, it virtually never returns to court to continue prosecuting its claims. Indeed, of the hundreds of virtually identical cases Strike 3 has filed in this district recently, not one has resulted in adversarial testing of Strike 3's claims, and only one has seen an identified defendant file an answer. See Supp. Memo. at 13.[2]

That practical limit on the court's ability to hold Strike 3 to its promises is not a reason to withhold discovery from it, but the issue is not whether Strike 3 should be denied relief to which it is presumptively [**10] entitled. Rather, the issue is whether good cause exists to allow Strike 3 to create the risk of coercion attendant to engaging in discovery practices normally considered premature. Viewed in that context, I conclude that Strike 3's promises, and its history of avoiding judicial oversight after securing leave to serve subpoenas, do not satisfy the good cause standard.

Moreover, Strike 3's assertion that it will be discerning in its choice of defendants — even taken at face value — raises an additional concern. Strike 3 assures the court that it will not proceed against persons it has satisfied itself engaged in unlawful infringement if it learns that they are facing undue hardship or if it entertains a doubt about the subscriber's responsibility for the infringement. See Supp. Memo. at 7-10. Such a commitment is salutary, but it is entirely dependent on Strike 3's decisions about which individuals are worthy of such leniency. And as the Supreme Court has recognized, "'the power to be lenient [also] is the power to discriminate.'" McCleskey v. Kemp, 481 U.S. 279, 312, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987) (quoting K. Davis, Discretionary Justice 170 (1973)). Allowing the expedited discovery Strike 3 seeks necessarily carries the risk that it will use the leverage it thereby gains [**11] against a mix of liable and innocent actors to discriminate against [*19] them on grounds other than those related to the merits of their claims. Such risks may arise in many other circumstances over which courts have no control, but that does not mean there is good cause to deviate from normally applicable rules to incur the risk in these cases. I conclude there is not.

First, whatever else Strike 3 will do with the information it secures if it prevails on these motions, it is likely that one thing it will not do is use the information to litigate the action in court. Strike 3 has filed 276 cases in this district since 2017. Of those, 133 remain pending, many with unresolved motions for expedited discovery. Of the 143 cases that have been resolved, Strike 3 reports that it settled 49 and voluntarily dismissed 94 - 28 due to the alleged infringers' hardship, 50 due to Strike 3's inability to satisfy itself that Doe (the service subscriber named as the defendant) was in fact the alleged infringer, and 16 for other reasons. See Supp. Memo. at 11-13. There can hardly be good cause to allow expedited discovery, particularly on an ex parte basis, to secure information that will not actually be used under judicial [**12] supervision to resolve the case on the merits.

Second, the fact that in more than a third of the

---

[2] In Strike 3 v. Doe, 18-CV-0445 (ILG) (ST), Strike 3 filed an Amended Complaint against a named defendant who then filed an Answer denying liability. The parties engage in no motion practice, exchanged no discovery, and reported that they had settled on the day they were scheduled to appear before the court for an initial conference. See id. DE 10; id. DE 19; id. Order dated Aug. 10, 2018.

Page 5 of 6

331 F.R.D. 14, *19; 2019 U.S. Dist. LEXIS 69632, **12

resolved cases (50 out of 143), Strike 3 could not satisfy itself that the named defendant was actually the alleged infringer further undermines the proposition that good cause exists to allow expedited discovery. Strike 3 captions each of its cases as *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address [number]*. Thus, in each case the named defendant is the subscriber of internet service whose identity will be revealed in the records Strike 3 hopes to subpoena. But Strike 3 acknowledges that in many cases, the "Doe" it has sued — that is, the subscriber — will prove to be someone other than the person who engaged in the allegedly unlawful conduct the Complaint describes. And as it has now revealed in response to my inquiry, the proportion of such unprovable cases is alarmingly high. It is thus apparent that Strike 3 is deliberately asserting claims in a scattershot fashion against a broad array of individuals simply because it is confident that many of them will be liable — even if almost as many of them are not. Such pleading seems wholly inconsistent with the requirement [**13] that a plaintiff may not file a complaint for an improper purpose and that each of a plaintiff's claims must be predicated on a good faith belief in the claim's merit. See *Fed. R. Civ. P. 11(b)(1)-(2)*. While I do not suggest that suing three people because two of them probably committed a provable copyright violation is a technical violation of *Rule 11*, the certainty that such an approach will impose needless burdens on innocent individuals counsels against a finding of good cause to permit expedited discovery.

Third, the results of its prior subpoenas belie Strike 3's argument that expedited discovery is necessary to deter copyright violations. I have no idea how much money Strike 3 received in settlement from individuals it identified after receiving subpoenaed records. More to the point, neither does anyone else who might be considering using BitTorrent to view Strike 3's copyrighted works without payment. As far as any such prospective infringer can tell from this court's public records, Strike 3 may have obtained nothing at all from any of the scores of alleged infringers it has already sued. Even if such observers might speculate that the minority of cases that resulted in settlement did so on terms

that required [**14] some level of payment by the alleged infringer, I cannot conclude that the information would suffice to deter any misconduct. If Strike 3 is achieving any meaningful deterrence as a result of its litigation practices, it may conceivably result from public awareness of the number of complaints it files. But granting expedited discovery would do little if anything to advance the deterrent effect resulting from awareness of the complaints themselves. I therefore conclude that because Strike 3 does so little to prosecute its claims after securing leave to conduct expedited discovery, granting leave to issue subpoenas in the cases before me will do little if anything to deter future copyright violations. As a result, Strike 3's interest in enforcing its rights does not constitute good cause to allow premature subpoenas.

Finally, I respectfully disagree with Strike 3's argument that, absent leave for expedited [*20] discovery to jump start its investigations of allegedly infringing activity, it will be unable to enforce its copyrights. See Memo. at 3. It may well be that current federal statutes and procedural rules do not provide Strike 3 with an effective method to combat the particular form of infringing [**15] activity that occurs over peer-to-peer file sharing networks. But that possibility is less a reason to depart from otherwise applicable rules on a case-by-case basis than a reason to consider amending the applicable statutes and rules to adapt to modern technology. To the contrary, attacking the problem by asking judges in hundreds of cases in just one district (and presumably thousands across the country) to consider the same motion and achieve a patchwork of results is plainly inefficient. See *generally* Annemarie Bridy, *Is Online Copyright Enforcement Scalable?*, *13 Vand. J. Ent. & Tech. L. 695, 724 (2011)* ("Simply put, litigation is not a scalable mechanism for dealing with the high volume of copyright disputes that arise from [peer-to-peer] file sharing.").

Congress has already acted to adapt copyright laws to the advent of the digital age. In the Digital Millennium Copyright Act ("DMCA"), *17 U.S.C. § 512, et seq.*, Congress made provisions for

Page 6 of 6

331 F.R.D. 14, *20; 2019 U.S. Dist. LEXIS 69632, **15

copyright enforcement lawsuits while accommodating the interests of internet service providers. However, the DMCA is "[t]acitly premised on the reality that litigation is not an efficient means of resolving the voluminous infringement claims that arise in the context of online services," and its provisions **[**18]** "require service providers to act cooperatively with rights owners, without intervention from a court, ... to identify those ostensibly responsible for its distribution." _Bridy, supra at 713_.

The problem for a litigant in Strike 3's position is that "[w]hen it enacted the DMCA, Congress did not anticipate the distributed nature of [peer-to-peer] networks or the correspondingly distributed nature of the infringement they would enable." _Id. at 716_; _see also In re Charter Commc'ns, Inc., Subpoena Enforcement Matter, 393 F.3d 771, 777-78 (8th Cir. 2005)_ (holding that that that the DMCA does not authorize a copyright owner requests to subpoena a Provider for records of its subscribers who use peer-to-peer file sharing to distribute copyrighted works); _Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Services, 351 F.3d 1229, 1237, 359 U.S. App. D.C. 85 (D.C. Cir. 2003)_ ("It is not the province of the courts ... to rewrite the DMCA in order to make it fit a new and unforeseen internet architecture, no matter how damaging that development has been to the [relevant industries].").

The enforcement problem that peer-to-peer file sharing technology creates for copyright owners is one that Congress could choose to remedy at any time, and indeed it has considered doing so, as Strike 3 tacitly acknowledges. _See, e.g._, Supp. Br. at 20 n. 7 (citing _Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks_, 108th **[**17]** Cong. (2003) (statement of Marybeth Peters, The Register of Copyrights before the Committee on the Judiciary) _available at_ http://www.copyright.gov/docs/regstat090903.html ). The fact that Congress has not acted, however, does not mean that courts should take it upon themselves to provide more effective enforcement mechanisms to potential plaintiffs.

If courts routinely grant the kind of _ex parte_

requests for expedited discovery at issue here, despite the general prohibition against such discovery and the heightened scrutiny that courts should apply to _ex parte_ discovery motions, then the legislative branch will have no incentive to make the policy decision about whether such expedited discovery should generally be available despite the potential burdens to internet users. On the other hand, if courts make inconsistent decisions on motions like these, then the rights of copyright owners and internet service subscribers alike will vary from one indistinguishable case to the next based only on the identity of the judge chosen at random to make the decision. Both possibilities are inefficient and undermine the role of Congress in making such policy choices on a nation-wide basis. I therefore **[**18]** conclude that Strike 3's concern about its ability to enforce its copyright against peer-to-peer file sharers is a valid one, but not one that provides good cause to depart from otherwise applicable discovery rules.

**[*21]** III. Conclusion

For all the reasons set forth above, I deny the plaintiff's motion for expedited discovery.

SO ORDERED.

Dated: Brooklyn, New York

March 21, 2019

/s/ James Orenstein

U.S. Magistrate Judge

---

End of Document

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

STRIKE 3 HOLDINGS, LLC,
                         Plaintiff,

                     vs.

JOHN DOE subscriber assigned IP address
151.202.19.143,

                        Defendant.

-----------------------------------------------------------------X

Case No. _____

**COMPLAINT FOR COPYRIGHT**
**INFRINGEMENT**

Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), brings this complaint against John Doe subscriber assigned IP address 151.202.19.143, and alleges as follows:

**Introduction**

1. This is a case about the ongoing and wholesale copyright infringement of Plaintiff's motion pictures by Defendant, currently known only by an IP address.

2. Plaintiff is the owner of award winning, critically acclaimed adult motion pictures.

3. Strike 3's motion pictures are distributed through the *Blacked*, *Tushy*, *Vixen*, and *Blacked Raw* adult websites and DVDs.  With more than 20 million unique visitors to its websites each month, the brands are famous for redefining adult content, creating high-end, artistic, and performer-inspiring motion pictures produced with a Hollywood style budget and quality.

4. Defendant is, in a word, stealing these works on a grand scale.  Using the BitTorrent protocol, Defendant is committing rampant and wholesale copyright infringement by downloading Strike 3's motion pictures as well as distributing them to others.  Defendant did not

1

infringe just one or two of Strike 3's motion pictures, but has been recorded infringing 28 movies over an extended period of time.

5.      Although Defendant attempted to hide this theft by infringing Plaintiff's content anonymously, Defendant's Internet Service Provider ("ISP"), Verizon Online LLC (Verizon Fios), can identify Defendant through his or her IP address 151.202.19.143.

6.      This is a civil action seeking damages under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

## Jurisdiction and Venue

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (jurisdiction over copyright actions).

8.      This Court has personal jurisdiction over Defendant because Defendant used an Internet Protocol address ("IP address") traced to a physical address located within this District to commit copyright infringement.  Therefore: (i) Defendant committed the tortious conduct alleged in this Complaint in this State; and, (ii) Defendant resides in this State and/or; (iii) Defendant has engaged in substantial – and not isolated – business activity in this State.

9.      Plaintiff used IP address geolocation technology by Maxmind Inc. ("Maxmind"), an industry-leading provider of IP address intelligence and online fraud detection tools, to determine that Defendant's IP address traced to a physical address in this District.  Over 5,000 companies, along with United States federal and state law enforcement, use Maxmind's GeoIP data to locate Internet visitors, perform analytics, enforce digital rights, and efficiently route Internet traffic.

10.     Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in this district because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District;

2

and, (ii) the Defendant resides (and therefore can be found) in this District and resides in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant or Defendant's agent resides or may be found in this District.

### Parties

11.     Strike 3 is a Delaware limited liability company located at 2140 S. Dupont Hwy, Camden, DE.

12.     Plaintiff currently can only identify Defendant by his or her IP address. Defendant's IP address is 151.202.19.143.  Defendant's name and address can be provided by Defendant's Internet Service Provider.

### Factual Background

### *Plaintiff's Award-Winning Copyrights*

13.     Strike 3's subscription based websites proudly boast a paid subscriber base that is one of the highest of any adult-content sites in the world.  Strike 3 also licenses its motion pictures to popular broadcasters and Strike 3's motion pictures are the number one selling adult DVDs in the United States.

14.     Strike 3's motion pictures and websites have won numerous awards, such as "best cinematography," "best new studio," and "adult site of the year."  One of Strike 3's owners, three-time director of the year Greg Lansky, has been dubbed the adult film industry's "answer to Steven Spielberg."

15.     Strike 3's motion pictures have had positive global impact, leading more adult studios to invest in better content, higher pay for performers, and to treat each performer with respect and like an artist.

16.     Unfortunately, Strike 3, like a large number of other makers of motion picture and television works, has a major problem with Internet piracy.   Often appearing among the most infringed popular entertainment content on torrent websites, Strike 3's motion pictures are among the most pirated content in the world.

***Defendant Used the BitTorrent File Distribution Network to Infringe Plaintiff's Copyrights***

17.     BitTorrent is a system designed to quickly distribute large files over the Internet. Instead of downloading a file, such as a movie, from a single source, BitTorrent users are able to connect to the computers of other BitTorrent users in order to simultaneously download and upload pieces of the file from and to other users.

18.     To use BitTorrent to download a movie, the user has to obtain a "torrent" file for that movie, from a torrent website.   The torrent file contains instructions for identifying the Internet addresses of other BitTorrent users who have the movie, and for downloading the movie from those users.   Once a user downloads all of the pieces of that movie from the other BitTorrent users, the movie is automatically reassembled into its original form, ready for playing.

19.     BitTorrent's popularity stems from the ability of users to directly interact with each other to distribute a large file without creating a heavy load on any individual source computer and/or network.   It enables Plaintiff's motion pictures, which are often filmed in state of the art 4kHD, to be transferred quickly and efficiently.   Moreover, BitTorrent is designed so that the more files a user offers for download to others, the faster the user's own downloads become.   In this way, each user benefits from illegally distributing other's content and violating copyright laws.

20.     Each piece of a BitTorrent file is assigned a unique cryptographic hash value.

21.     The cryptographic hash value of the piece ("piece hash") acts as that piece's

4

unique digital fingerprint.  Every digital file has one single possible cryptographic hash value correlating to it.  The BitTorrent protocol utilizes cryptographic hash values to ensure each piece is properly routed amongst BitTorrent users as they engage in file sharing.

22.     The entirety of the digital media file also has a unique cryptographic hash value ("file hash"), which acts as a digital fingerprint identifying the digital media file (e.g. a movie). Once infringers complete the downloading of all pieces which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate.

23.     Defendant used the BitTorrent file network to illegally download and distribute Plaintiff's copyrighted motion pictures.

24.     Plaintiff's investigator, IPP International U.G. ("IPP") established direct TCP/IP connections with the Defendant's IP address, as outlined on Exhibit A, while Defendant was using the BitTorrent file distribution network.

25.     While Defendant was infringing, IPP downloaded from Defendant one or more pieces of the digital media files containing Strike 3's motion pictures listed on Exhibit A ("Works").

26.     A full copy of each digital media file was downloaded from the BitTorrent file distribution network, and it was confirmed through independent calculation that the file hash correlating to each file matched the file hash downloaded by Defendant.

27.     Defendant downloaded, copied, and distributed a complete copy of Plaintiff's Works without authorization.

28.     At no point was Plaintiff's copyrighted content uploaded by IPP to any BitTorrent user.

29.     The digital media files have been verified to contain a digital copy of a motion

5

picture that is identical (or alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original copyrighted Works.

30.     Defendant's infringement is continuous and ongoing.  Absent this lawsuit, Plaintiff knows of no way to effectively prevent Defendant from infringing Plaintiff's motion pictures.

31.     Plaintiff owns the copyrights to the Works and the Works have been registered with the United States Copyright Office.

32.     The United States Copyright Office registration information for the Works, including the registration number, is outlined on Exhibit A.

33.     Plaintiff is entitled to seek statutory damages and attorneys' fees under 17 U.S.C. § 501 of the United States Copyright Act.

## COUNT I

### Direct Copyright Infringement

34.     The allegations contained in paragraphs 1-33 are hereby re-alleged as if fully set forth herein.

35.     Plaintiff is the owner of the Works, which is an original work of authorship.

36.     Defendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol.

37.     At no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise.

38.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A)     Reproduce its Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B)     Distribute copies of the Works to the public by sale or other transfer of

6

ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)    Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4) and 501, by

showing the Works' images in any sequence and/or by making the sounds accompanying the

Works' audible and transmitting said performance of the work, by means of a device or process,

to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's

definitions of "perform" and "publically" perform); and

(D)    Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by

showing individual images of the works non-sequentially and transmitting said display of the

works by means of a device or process to members of the public capable of receiving the display

(as set forth in 17 U.S.C. § 101's definition of "publicly" display).

39.    Defendant's infringements were committed "willfully" within the meaning of 17

U.S.C. § 504(c)(2).

WHEREFORE, Plaintiff respectfully requests that the Court:

(A)    Permanently enjoin Defendant from continuing to infringe Plaintiff's copyrighted

Works;

(B)    Order that Defendant delete and permanently remove the digital media files

relating to Plaintiff's Works from each of the computers under Defendant's possession, custody

or control;

(C)    Order that Defendant delete and permanently remove the infringing copies of the

Works Defendant has on computers under Defendant's possession, custody or control;

(D)    Award Plaintiff statutory damages per infringed work pursuant to 17 U.S.C. §

504(a) and (c);

(E)    Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. §

505; and

(F)     Grant Plaintiff any other and further relief this Court deems just and proper.

### DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

By:     /s/ *Jacqueline M. James*

Jacqueline M. James, Esq. (1845)
The James Law Firm, PLLC
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
T: 914-358-6423
F: 914-358-6424
E-mail: jjames@jacquelinejameslaw.com
*Attorneys for Plaintiff*

8

**Exhibit A to the Complaint**

**Location:** Valley Stream, NY
**Total Works Infringed:** 28

**IP Address:** 151.202.19.143
**ISP:** Verizon Fios

| Work | Hash | UTC | Site | Published | Registered | Registration |
|---|---|---|---|---|---|---|
| 1 | 650637F4C368482C7EBB844370A51B7A377FFF4E | 01/18/2019 02:00:14 | Blacked Raw | 01/17/2019 | 02/22/2019 | PA0002155141 |
| 2 | 0151ABB7451FAE1069959807F221598CC54A54A3 | 02/14/2019 10:27:18 | Blacked | 02/13/2019 | 03/11/2019 | PA0002158597 |
| 3 | 06AB3CB5E3A905199D1E5FA746C9B68A8D1F0D7E | 12/21/2018 01:59:19 | Blacked Raw | 12/20/2018 | 01/22/2019 | PA0002147906 |
| 4 | 19A14F5A1BEDEA01536EA9AE0E9566FDA2F94626 | 12/21/2018 08:21:55 | Blacked | 12/20/2018 | 02/02/2019 | PA0002154970 |
| 5 | 1DE2F763010DA2CDC8A6FD27AF18A2B92B5FEA5E | 01/11/2019 08:14:07 | Blacked | 01/10/2019 | 02/02/2019 | PA0002155382 |
| 6 | 34F105634E5D1FEEA2F74752390910DC325AB959 | 01/01/2019 04:56:41 | Blacked | 12/31/2018 | 01/22/2019 | PA0002147686 |
| 7 | 44A9F9601025B1B06544FC76D3E4CA864FB95355 | 10/17/2018 23:59:37 | Blacked | 10/17/2018 | 10/28/2018 | PA0002130456 |
| 8 | 53F8B69368C78B8EB5BF0D8C234FA70CFE869900 | 10/03/2018 00:15:32 | Blacked | 10/02/2018 | 10/16/2018 | PA0002127785 |
| 9 | 55E8B317484DCA0546D6E5851B3E5161AFF4F8A2 | 12/03/2018 05:11:22 | Blacked | 12/01/2018 | 01/22/2019 | PA0002149844 |
| 10 | 5ACE54AFBB931F34781E6EB2806DDC834FC7F28F | 10/14/2018 21:59:24 | Blacked Raw | 10/14/2018 | 11/01/2018 | PA0002143424 |
| 11 | 5C341E409E693511D9F005F798C29BF9AA18A78F | 10/27/2018 09:21:08 | Vixen | 10/26/2018 | 12/10/2018 | PA0002145824 |
| 12 | 653907EBB49CFD18499AB7045B5344630BC3F3C2 | 02/17/2019 11:22:55 | Blacked Raw | 02/16/2019 | 03/11/2019 | PA0002158595 |
| 13 | 6BAB36FF9E76B54FF6ACC89C5024A6CBFE756578 | 11/05/2018 23:45:16 | Blacked Raw | 11/03/2018 | 12/10/2018 | PA0002145823 |
| 14 | 7A720A3C5DB472EA842DD96CEAE354E5EF2E3313 | 10/23/2018 16:42:11 | Blacked | 10/22/2018 | 11/25/2018 | PA0002136653 |
| 15 | 7A8D1409B6A0DAFE61B904E3376E619A770A0EDB | 12/21/2018 02:05:58 | Tushy | 12/20/2018 | 01/22/2019 | PA0002147682 |
| 16 | 7B49F1542CA227EB051129784E4FA7D5CACC7DC4 | 10/05/2018 06:04:50 | Blacked Raw | 10/04/2018 | 10/16/2018 | PA0002127787 |
| 17 | 99B72BB53FD0577AABEEF2BF2BC561C497998D6B | 12/26/2018 11:55:39 | Vixen | 11/30/2018 | 12/18/2018 | PA0002141918 |

| Work | Hash | UTC | Site | Published | Registered | Registration |
|------|------|-----|------|-----------|------------|--------------|
| 18 | A7B3154FBE6AD9C1BB1D38BEFED9921882AC0A08 | 01/07/2019 06:13:59 | Tushy | 01/06/2019 | 01/22/2019 | PA0002147897 |
| 19 | AE6A6BB73F9D2166B8D632CC6777CED24397157E | 01/04/2019 16:58:01 | Blacked Raw | 01/02/2019 | 02/02/2019 | PA0002155379 |
| 20 | BA32A3FEE2BE3044DD5FE32DD0DA9BB42F9EF1B8 | 12/05/2018 19:22:15 | Blacked Raw | 12/03/2018 | 01/22/2019 | PA0002149845 |
| 21 | BDDC7F5B0C3898C483C345DCCAAC769743658C9F | 10/10/2018 12:33:49 | Blacked Raw | 10/09/2018 | 11/01/2018 | PA0002143427 |
| 22 | C0E42D6F2116A50652E4E866102882E3A01D3043 | 11/07/2018 22:01:56 | Blacked | 11/06/2018 | 11/25/2018 | PA0002136603 |
| 23 | C32CF4467731185E1DD2025B999781FE21815A81 | 10/12/2018 02:16:10 | Blacked | 10/12/2018 | 10/28/2018 | PA0002130455 |
| 24 | D6699A993927D144FD06592C1B105D82545E60AE | 12/19/2018 03:24:35 | Blacked Raw | 12/18/2018 | 02/02/2019 | PA0002155391 |
| 25 | EFD5EF8D81678640C55A49D54DA543BC4810B923 | 01/06/2019 06:02:08 | Blacked | 01/05/2019 | 01/22/2019 | PA0002147685 |
| 26 | F3452F84B3512FF55A84A187AAE791089A24CA3A | 12/04/2018 00:34:32 | Blacked Raw | 07/21/2018 | 09/01/2018 | PA0002119592 |
| 27 | F7A1664897ED25B4A69E74183370FD8202E9A9E0 | 02/20/2019 07:33:07 | Vixen | 02/18/2019 | 03/11/2019 | PA0002158598 |
| 28 | F827EDACEB3B33A1E69273B205B9B9285A1FCC98 | 01/21/2019 | Blacked | 01/20/2019 | 02/22/2019 | PA0002155135 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STRIKE 3 HOLDINGS, LLC,

                                        Case No. 19-CV-02481(SJF)(SIL)

               Plaintiff,

     - against -

JOHN DOE, subscriber assigned IP address
151.202.19.143,

               Defendant.
-----------------------------------------------------------------X

## ATTORNEY AFFIRMATION OF SERVICE

I, MICHAEL CASSELL, an attorney at law and partner of the firm HOGAN &
CASSELL, LLP, attorneys for the defendant, John Doe, subscriber assigned IP address
151.202.19.143 ("Defendant"), in the above-entitled action, hereby certify under penalty of
perjury that I caused a copy of Defendant's Motion seeking to quash the subpoena served by the
plaintiff, Strike 3 Holdings, LLC ("Plaintiff"), upon Verizon and permitting Defendant to
proceed anonymously to be served on all parties appearing in this action on November 15, 2019,
in the manner indicated below:

| | |
|---|---|
| Jacqueline M. James, Esq.<br>The James Law Firm, PLLC<br>*Attorneys for Plaintiff*<br>445 Hamilton Avenue<br>Suite 1102<br>White Plains, New York 10601 | ☐ First Class Mail (by placing in an official depository of the United States Postal Service within the State of New York).<br>☒ Federal Express (standard overnight, shipping billed to sender)<br>☒ Electronic Mail (jjames@jacquelinejameslaw.com)<br>☐ Electronic Filing |

Pursuant to Local R. Civ. P. 1.9 and 28 U.S.C. § 1746, I declare under penalty of perjury
that the foregoing is true and correct.

Dated:  November 15, 2019

Respectfully submitted,
HOGAN & CASSELL, LLP
Attorneys for Defendant

By: _____
Michael Cassell
500 North Broadway, Suite 153
Jericho, New York 11753
Tel.  (516) 942-4700
Email  mcassell@hogancassell.com